### UNITED STATES v. BANETH.
### No. 270.

Circuit Court of Appeals, Second Circuit.

May 31, 1946.

---

I. Robert Bassin, of Jamaica, N. Y., for appellant.

Bruno Schachner and John F. X. McGohey, U. S. Atty., both of New York City (Edward C. Wallace, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

The defendant was convicted on Counts One and Two of an indictment for violation of § 207 of Title 18 of the United States Code Annotated, which contained two other counts—Counts Three and Four—for the violation of § 203 of Title 18, United States Code Annotated. The jury brought in a verdict of guilty on all four counts, but the court arrested judgment upon Counts Three and Four, and only Counts One and Two are before us on this appeal. The first count charged that Baneth was a purchasing agent for the "New York Ordinance District" of the War Department, and that he had asked a bribe of $300 of one, Joseph Brown, and of Brown's company known as Poloron Products, Inc., for approving the rental to that company of "certain electric welding machines"; and the second count charged that he accepted the bribe. The third count charged that he had agreed to receive a bribe "in relation" to his official action as to a lathe and two "surface grinders"; and the fourth count charged that he received the bribe. The points raised upon this appeal are the insufficiency of evidence to sustain the verdict on Counts One and Two; the incompetence of testimony as to other similar offences; and the impropriety of joining the third and fourth counts with the first and second. The evidence permitted the jury to find the following facts. Brown was vice-president of Poloron Products, Inc., which was engaged in making "mined crates" under contracts with the War Department. Baneth was an employee of the War Department, and it was among his duties to allot tools and machines belonging to the "Defense Plants Corporation" to manufacturers under contract with the Department. Until about the middle of May, 1944, Brown had got such machinery as he needed from another employee of the War Department, named Tighe. Apparently it was from Tighe that he got the lathe and one of the "surface grinders" mentioned in the third and fourth counts. The evidence as to the second "surface grinder" is somewhat ambiguous, and for argument we shall assume, as apparently the judge did when he arrested judgment upon those counts, that it was too uncertain to support a verdict. Be that as it may, Baneth succeeded Tighe during May, and Brown asked him for other machines to be used by the Poloron company, among which was a "spot welder," which is a kind of "electrical welding machine." Baneth at that time threw out some equivocal intimations looking towards a bribe, but no money passed. On the last

980

day of May they had another talk when Baneth made his purpose plain, after which Brown advised persons in the Department, and finally on August 5th, by pre-arrangement, Brown paid Baneth $300 in marked bills and Baneth was at once arrested. Before making this payment Brown had told Baneth that he was "here to sign up for the equipment that we need" and Baneth had answered "Have you got the stuff with you?"

The argument is that it does not appear that the bribe was given to secure Baneth's consent to the delivery of any "electrical welding machines," as alleged in Counts One and Two. However, as we have already said, Brown had included in his first request a "spot welder"; and, since Baneth was at that time already asking for a bribe, though in covert terms, that evidence was alone enough to support Count One. It was evidence enough to support Count Two also, provided that the "equipment" to which Brown referred on August 5th, still included a "spot welder." The record is not perhaps perfectly clear whether that was so, but that makes no difference. Even though they were not still bargaining for any "electrical welding machines" on August 5th, the variance was to the last degree unimportant. They were certainly bargaining about "the rental of machines" as Count Two alleged; and it is not suggested that it was in the least prejudicial to Baneth's defense whether these machines still included the "spot welder" mentioned in May. United States v. Remington, 2 Cir., 64 F.2d 386. Unless we are to revert to notions, generally regarded as obsolete for at least fifty years, such errors do not count.

■ The next objection is that the prosecution was allowed to prove that upon an earlier occasion Baneth had proposed to another company, under contract with the War Department, that he should be paid for allowing certain tools to be retained for that company's use. This was, indeed, a quite separate crime, but the testimony falls exactly within the doctrine that, when intent is in issue, other similar crimes may be proved. Our decision to the contrary in Marshall v. United States, 2 Cir., 197

F. 511, was almost immediately in substance overruled by two of the same judges who made it (Farmer v. United States, 2 Cir., 223 F. 903, 911), and, as we said in National Labor Relations Board v. National Seal Corporation, 2 Cir., 127 F.2d 776, 778, the cases to the contrary "are legion." Section 207 of Title 18, requires that the accused shall "ask" and "receive" the bribe with a specific intent, and so the indictment alleged. The doctrine could not be more closely applicable.

■ The last point is the misjoinder of Counts Three and Four with Counts One and Two. In answer it is enough to say that no such objection appears in the record; and that it cannot be made after verdict. Logan v. United States, 144 U.S. 263, 296, 297, 12 S.Ct. 617, 36 L.Ed. 429; Bucklin v. United States (No. 2), 159 U.S. 682, 685, 16 S.Ct. 182, 40 L.Ed. 305.

Conviction affirmed.