UNITED STATES of America,
Appellant,

v.

Joseph M. MARGIOTTA, Appellee.

Nos. 266, 267 and 429, Dockets 81–1190, 81–1258 and 81–3073.

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1981.
Decided Oct. 13, 1981.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Vivian Shevitz, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for appellant.

Daniel J. Hurson, Washington, D. C. (William G. Hundley, Larry S. Gondelman, Washington, D. C., and Paul Macielak, Oyster Bay, N. Y., of counsel), for appellee.

Before WATERMAN and KAUFMAN, Circuit Judges, and PIERCE, District Judge.*

KAUFMAN, Circuit Judge:

For more than a century after the founding of the Republic, the permissible scope of government appeals from adverse rulings in criminal cases was not in dispute. Independent of the double jeopardy provision of the Constitution, early common law did not provide a right of appeal for the Government in criminal cases.[1] Beginning in 1907, federal enactments authorized Government appeals in limited circumstances.[2] Despite this, courts generally made clear their disposition to interpret statutory authority strictly against the right to appeal.[3] The subsequent decades-long trend toward expansion of the Government's right to appeal in criminal cases culminated in the Omnibus Crime Control Act of 1970,[4] which amended the Criminal Appeals Act to allow Government appeals from district court orders of dismissal and certain other types of rulings.[5]

Today we are asked to determine the boundaries of congressional authorization for Government appeals from orders in criminal cases, pursuant to 18 U.S.C. § 3731. The issue before us arises out of a criminal

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. See The Supreme Court, 1974 Term, 89 Harv. L.Rev. 47, 55 & n.12 (1975); Moore's Federal Practice ¶ 110.04[3] at 102.1 (2d ed. 1973).

2. Act of March 2, 1907, ch. 2564, 34 Stat. 1246. See generally United States v. Sisson, 399 U.S. 267, 293–96, 315–19, 90 S.Ct. 2117, 2143–45, 26 L.Ed.2d 608 (1970); Carroll v. United States, 354 U.S. 394, 402 n.11, 77 S.Ct. 1332, 1337 n.11, 1 L.Ed.2d 1442 (1957).

3. See Moore, supra note 1, at 102.1; Comment, Double Jeopardy and Government Appeals of Criminal Dismissals, 52 Tex.L.Rev. 303, 309 (1974). Cf. Hall, Stricter Liberal Construction of Penal Statutes, 48 Harv.L.Rev. 748 (1935).

4. Omnibus Crime Control Act of 1970, Pub.L. 91–644, Title III, § 14(a), 84 Stat. 1890.

5. The Criminal Appeals Act has been amended at several times prior to 1970, in 1911, 1928, 1942, 1949, and 1960. The amended Act with which we are now dealing provides in pertinent part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information. . . .

The provisions of this section shall be liberally construed to effectuate its purposes.
18 U.S.C. § 3731 (1976).

prosecution against Joseph M. Margiotta, long-time chairman of the Republican Committee of both Nassau County and the Town of Hempstead, New York. The Government charged Margiotta with mail fraud [6] and extortion [7] for activities involving an alleged political patronage scheme. The intricate tale of fraud unfolded during a trial lasting three weeks, at which nearly seventy witnesses testified. Following the close of the trial, the jury deliberated for eight days. After it stated that it was hopelessly deadlocked, the judge declared a mistrial. In anticipation of another closely fought contest at retrial, the Government sought reconsideration of a number of legal and evidentiary rulings Judge Sifton made at the trial. After entertaining the Government's requests, Judge Sifton entered an order in which he stated that the challenged rulings would be followed at the retrial.

The Government appeals to this Court for review of this order. We find those portions of Judge Sifton's order indicating the court would abide by certain jury instructions at retrial not appealable under § 3731. The portions of the order concerning the judge's evidentiary rulings stand on a different footing. Clearly, they are appealable pursuant to the Criminal Appeals Act. We conclude, however, that the district court acted well within its discretion in making each of the contested evidentiary rulings. Accordingly, we dismiss the appeal from the order dealing with the jury instructions, and affirm the order on the evidentiary rulings.[8]

### I.

We shall attempt to fit a convoluted set of circumstances into a framework of coherence. As we have stated, defendant-appellee, Joseph M. Margiotta, was at all relevant times the chairman of the Republican Committee of both Nassau County and the Town of Hempstead, New York. Although he held no elective office, his power and prestige as County and Town Republican Chairman, according to the Government, gave him substantial control over public

**6.** 18 U.S.C. § 1341 (1976) provides in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing ... or takes or receives therefrom any such matter or thing, or knowingly causes to be delivered by mail ... any such matters or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**7.** 18 U.S.C. § 1951 (1976) provides in pertinent part:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce by ... extortion or attempts or conspires so to do, commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
> (b) As used in this section—
>
> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

**8.** Subsequent to oral argument, the Government filed a petition for mandamus to obtain review of those portions of the order concerning the jury instructions in the event that this Court found them not appealable under the Criminal Appeals Act, 18 U.S.C. § 3731. Mandamus is not to be employed to circumvent the limitations of the Criminal Appeals Act. *See Will v. United States*, 389 U.S. 90, 96–97, 88 S.Ct. 269, 274–75, 19 L.Ed.2d 305 (1967); *United States v. Weinstein*, 452 F.2d 704, 712 (2d Cir. 1971), *cert. denied sub nom. Grunberger v. United States*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). Granting mandamus to review the merits of the Government's contentions regarding the jury instructions would circumvent the limitations of the Criminal Appeals Act, which we find not to authorize an appeal to review the jury instructions. Furthermore, the circumstances in this case do not present a "compelling need" for issuance of mandamus to prevent "gross disruption in the administration of criminal justice." *See United States v. Dooling*, 406 F.2d 192, 198 (2d Cir.), *cert. denied sub nom. Persico v. United States*, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969). Accordingly, we deny the Government's petition for mandamus.

officials in Hempstead and Nassau County who had been elected to office as candidates of the Republican Party. As a result, it was charged, Margiotta was able to exert influence over the appointees of these officials. These political connections purportedly offered Margiotta the opportunity to indulge in a lucrative fraudulent scheme involving the distribution of insurance commissions on municipal properties to his political allies.

In November, 1980, a federal grand jury indicted Margiotta on one count of mail fraud, in violation of 18 U.S.C. § 1341 (1976), and six counts of extortion, in violation of 18 U.S.C. § 1951 (1976). The mail fraud count (Count One) was based on a scheme to defraud the Town of Hempstead, Nassau County, New York State, and their citizens (1) of the right to have the affairs of the Town, County and State conducted honestly and free from corruption, and (2) of the right to Margiotta's honest participation in the governmental affairs of the Town, County, and State. The factual predicate underlying Count One was an insurance commission ruse in which, pursuant to an alleged secret agreement, Margiotta contrived the appointment of Richard B. Williams & Sons, Inc., an insurance agency, (hereinafter the Williams Agency) as Broker of Record for the Town and County. In return, the Agency paid portions of its commissions to insurance brokers and other persons Margiotta had designated. Counts Two through Six charged Margiotta with violating the Hobbs Act by inducing the Williams Agency to make the payments of the insurance commissions under color of official right and by means of the wrongful use of fear.

On January 6, 1981, Margiotta filed a pretrial motion to dismiss Count One,[9] alleging, *inter alia*, that Count One failed to state an offense under § 1341, that the Count was duplicitous, and that it was unconstitutionally vague. In response to

these claims, the Government submitted an affidavit enumerating hundreds of items sent through the mail upon which fraudulent use of the mail could be grounded. Judge Sifton ruled that Count One stated an offense but ordered the Government to elect a single mailing to submit to the jury. The Government appealed that ruling to this Court, which held that the order was appealable and that the Government could proceed to trial on numerous specified mailings, *United States v. Margiotta,* 646 F.2d 729 (2d Cir. 1981).

Trial commenced on March 27, 1981. The Government presented evidence of a scheme of fraud spun into a web of political power. The involvement of the Nassau County Executive and the Presiding Supervisor of the Town of Hempstead in maintaining the properties owned and operated by their respective jurisdictions fostered the development of this artifice. One aspect of property maintenance was the provision of insurance coverage. As a matter of practice, the sole responsibility for obtaining insurance on properties owned by the County and the Town was delegated to a Broker of Record designated by these entities and serving at their pleasure. Upon placing an insurance policy on municipal property, the Broker of Record received, as a commission, a portion of the money paid by the municipality for the insurance policies as well as for their renewals and extensions.

According to the Government, this municipal insurance activity became the basis for a scheme to defraud the citizens of Hempstead and Nassau County in 1968. At that time, Richard B. Williams, founder of the Williams Agency, decided to seek the position of Broker of Record for the Town of Hempstead, then held by Mortimer Weis. A long-time political associate of Joseph Margiotta, Williams allegedly met with Margiotta and Weis to fashion an acceptable arrangement. The Government argued

---

**9.** This motion related to a prior indictment that was superseded by one filed on January 15, 1981. The major change in the superseding indictment was the addition of the word "secret" before the description of the alleged fraudulent agreement between the defendant and the Williams Agency. This superseding indictment has been the predicate for subsequent proceedings.

that a secret "deal" was struck: the Williams Agency would be named Broker of Record for the Town of Hempstead, and Weis would become a $10,000 a year consultant to the Town. In return for the appointment, the Williams Agency would make "kickbacks" amounting to 50% of its commissions to licensed insurance brokers and others designated by Margiotta. Thereafter, the Government contends, Ralph Caso, the Presiding Supervisor of Hempstead, appointed the Williams Agency as Hempstead's Broker of Record based on Margiotta's recommendation. In 1969, the Williams Agency began to write insurance for the Town of Hempstead and to make distributions of portions of its commissions. In 1970 Caso was elected County Executive of Nassau County. After his election, the Government charges, Caso met with Margiotta and Williams. Soon thereafter, the Williams Agency was appointed Broker of Record for Nassau County and commenced to distribute 50% of the commissions it earned on Nassau County properties to brokers and others politically allied with Margiotta. Between 1969 and 1978, the Government maintains, the compensation paid the Broker of Record in connection with this scheme totalled in excess of two million, two hundred thousand dollars.

To support its theory that the insurance arrangement was a scheme to defraud, the Government sought to prove that Margiotta tried to conceal the practice by directing the preparation of fictitious property inspection reports. Thus, it would create the appearance that the recipients of the insurance proceeds were legitimately earning their commissions. The Government, in addition, presented evidence showing that Margiotta tried to disguise this activity by misleading the State Investigation Commission when it inquired into the insurance commission payments in 1977 and 1978.

At trial Margiotta attempted to prove that he had no secret agreement with the Williams Agency for the distribution of insurance commissions as a *quid pro quo* for

procuring the appointment of the Agency as Broker of Record. He offered a defense of good faith. While admitting that he recommended the Williams Agency as Broker of Record for both Hempstead and Nassau County, and that he directed the distribution of insurance commissions to his political allies, he argued that this activity was merely a longstanding patronage practice that had been undertaken for decades by both Republicans and Democrats in Nassau County. He further asserted that he was not responsible for the preparation of falsified inspection reports, and that he terminated distribution of insurance commissions after a New York state law was changed in 1978 to prohibit it.

After deliberating conscientiously for more than one week, the jury announced it was unable to reach a verdict. The court declared the mistrial we noted above.

In anticipation of a second trial, the Government applied to the district court for reconsideration of several rulings concerning its jury instructions and also decisions on admissibility of evidence at the trial. The Government sought a definitive order as to whether the court would make the same rulings at retrial. In an order entered on June 1, 1981, Judge Sifton stated that the legal and evidentiary rulings challenged by the Government would be followed on retrial.

The Government challenges several portions of the court's jury instructions. As we have noted, Count One alleged that Margiotta committed a violation of the mail fraud statute when he devised a scheme to defraud the citizens of Nassau County and the Town of Hempstead (1) of the right to have the affairs of those entities conducted honestly, free from corruption, fraud, and dishonesty, and (2) of Margiotta's honest and faithful participation in the governmental affairs of those entities. The Government sought a charge that a special fiduciary relationship need not be established for it to prove the first "prong" of Count One.[10] Judge Sifton stated, how-

---

**10.** The Government's theory is that the fraud inherent in the scheme does not involve the

breach of a fiduciary duty by the "architect of the scheme," but concerns the impact of the

ever, that his unitary instruction was correct—for the Government to prevail on the mail fraud charge, it would have to show that the scheme was devised by someone who, like a public official, owes some kind of special fiduciary duty to the citizenry.[11] The Government also challenges Judge Sifton's related jury instruction that a violation of mail fraud under Count One required an additional showing of willful concealment.[12] The Government, moreover, contests those portions of the jury instruction concerning Counts Two through Six, which charged Margiotta with violating the Hobbs Act by inducing the Williams Agency to make the insurance payments under color of official right and through the wrongful use of fear. The district court declined to instruct the jury that the defendant could be found guilty, as a principal, of extortion under color of official right. Instead, the court instructed that Margiotta could be found guilty of this offense pursuant to 18 U.S.C. § 2(b) only if the jury concluded that he had caused public officials acting under color of official right to induce a victim to part with money.[13] Finally, the Government takes issue

with those portions of Judge Sifton's order stating that the court at retrial will be bound by rulings excluding: (1) evidence that defendant's conduct violated New York law; (2) evidence of a prior similar act involving employee salary increases; and (3) certain statements of defendant's attorneys. The Government presents these contentions to this Court on an appeal from Judge Sifton's order pursuant to 18 U.S.C. § 3731. We turn at once to whether Judge Sifton's rulings are appealable.

## II.

■ The right of the Government to appeal from an adverse ruling in a criminal case is governed by the Criminal Appeals Act, 18 U.S.C. § 3731 (1976). *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Alberti*, 568 F.2d 617 (2d Cir. 1977).[14] Amended in 1970 as part of the Omnibus Crime Control Act,[15] Section 3731 presently provides in pertinent part:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a[n] . . . order of a district

corrupt plan on the operation of the government. The first prong of Count One describes the alleged impact of the scheme as depriving the citizens of Town and County of their right to have their governmental affairs conducted free from corruption.

**11.** The district court declined to adopt the Government's requested charge on the ground that such an instruction would have permitted the jury to find the defendant guilty of mail fraud simply on the basis of a finding that the kickback scheme had been devised to secure a public position without requiring that the jury find a breach of a fiduciary relationship on the part of the parties.

**12.** The court instructed the jury that it must determine whether the particular fiduciary duties assumed by the defendant or the Broker of Record included a duty requiring *disclosure* of the kickback scheme or to prohibit *concealment* of that arrangement.

**13.** 18 U.S.C. § 2(b) (1976), provides: "whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal."

The district court declined to instruct the jury that the defendant could be found guilty as a principal of activities under color of official right, as well as an aider and abettor under § 2(b), because of the absence of evidence from which reasonable jurors could have concluded beyond a reasonable doubt that the victims of the alleged extortion reasonably believed that the defendant's *de jure* or *de facto* position in local government gave him an *official right* to require the kickbacks. The essence of Judge Sifton's rationale for declining to make the charge as requested by the Government, then, was that liability for extortion under color of official right as a principal requires a reasonable belief on the part of the victim that the defendant was using the power of public office to extort payments of money.

**14.** An appeal by the Government in a criminal case must be based on express statutory authority. *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892); *United States v. Hitchman*, 602 F.2d 689 (5th Cir. 1979). *See generally* Comment, *Double Jeopardy and Government Appeals of Criminal Dismissals, supra* note 3.

**15.** See note 4 *supra*.

court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts (sic) suppressing or excluding evidence ... not made after the defendant has been put in jeopardy....

The provisions of this section shall be liberally construed to effectuate its purposes.[16]

Determining whether those portions of the order stating that the court would abide by its jury instructions are appealable calls for a two-step inquiry. The threshold question is whether the adverse action taken by the district court is an action from which the statute authorizes a Government appeal. Specifically, does the order constitute a "dismiss[al] ... as to any one or more counts" of an indictment? *See United States v. Alberti, supra,* 568 F.2d at 621 (order granting new trial does not meet threshold requirement of a dismissal); *United States v. Taylor,* 544 F.2d 347 (8th Cir. 1976). If the adverse ruling by the district court does fall within the ambit of the statutory language, we must then determine whether the appeal is barred because the double jeopardy clause of the Constitution would prohibit further prosecution. *United States v. Wilson,* 420 U.S.

332, 337, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975); *United States v. Alberti, supra,* 568 F.2d at 620. We hold that § 3731 does not authorize a Government appeal from those portions of Judge Sifton's order relating to the jury instructions. We are of the view that this ruling does not meet the threshold statutory requirement of an order "dismissing an indictment ... as to one or more counts...."

In light of Congress's mandate that the provisions of § 3731 are to be liberally construed,[17] it is clear that Congress intended to remove all statutory barriers[18] to Government appeals from dismissals. *United States v. Wilson, supra,* 420 U.S. at 337, 95 S.Ct. at 1018. The scope of the double jeopardy prohibition on Government appeals from dismissals has frequently been the subject of inquiry by both courts and commentators.[19] But the outer limits of the category of "dismiss[als] ... as to one or more counts" have thus far not been defined with clarity. To decide this case it is necessary to pour content into the heretofore nearly empty vessels of these statutory words and to attempt to articulate functional guidelines[20] for determining appealability pursuant to § 3731.

We agree that appealability from a dismissal under § 3731 does not require formal dismissal of an entire count of an indictment. If it did, appealability might often turn on mere pleading technicalities, such as whether the Government happened to plead the allegations affected by the chal-

16. See note 5 *supra.*

17. *Id. see United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975); *United States v. Von Barta,* 635 F.2d 999 (2d Cir. 1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).

18. The legislative history indicates that Congress intended to extend the Government's right of appeal from dismissals to the constitutional limits. *See* S.Rep. No. 91–1296, 91st Cong. 2d Sess. p. 18 (1970); H.R. Conf. Rep. No. 91–1768 p. 21 (1970).

19. *See, e. g., United States v. Sanford,* 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976); *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *United States v. Wilson, supra; United States v. Jenkins,* 420 U.S. 358,

95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Von Barta, supra,* 635 F.2d at 1004; *United States v. Choate,* 527 F.2d 748 (9th Cir.), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1975); Comment, *Double Jeopardy and Government Appeals of Criminal Dismissals, supra* note 3; *Moore's Federal Practice* ¶ 110.04[3] (2d ed. 1973).

20. *United States v. Wilson,* 492 F.2d 1345 (3d Cir. 1973) (although district court labelled action a "dismissal" of the indictment, reviewing court should determine appealability of district court's order by reference to legal effect rather than label), *rev'd on other grounds and remanded,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

lenged ruling in a separate count or together with other allegations. Instead, appealability from a "dismiss[al] . . . as to one or more counts" under § 3731 requires that the district court have taken some action—for instance, striking a factual allegation from the indictment—that has the practical effect of eliminating an independent basis upon which a conviction could be secured. One court has defined a dismissal of a count or a portion thereof, for purposes of appeal, as the elimination of "any discrete basis for the imposition of criminal liability that is contained in the indictment." *United States v. Sanabria*, 548 F.2d 1, 5 (1st Cir. 1976), *rev'd on other grounds*, 437 U.S. 54, 97 S.Ct. 2170, 57 L.Ed.2d 43 (1977). A brief examination of three principal cases will clothe these abstract words with fuller meaning.

In *United States v. Sanabria, supra*, defendant-appellee Sanabria and fifteen others were charged in a one-count indictment with conducting an illegal gambling business involving both a numbers and horse betting operation, in violation of 18 U.S.C. § 1955. The district court excluded the Government's evidence of numbers activity on the ground that the defendant was not provided with sufficient notice of this charge. The Court of Appeals for the First Circuit found the district court's action reviewable under § 3731. Although its ruling did not strike an entire count from the indictment, its action eliminated one basis for obtaining a conviction. *Id.* at 5. The numbers activity could have served as a distinct factual predicate for § 1955 liability and thus could have supported a separate count in the indictment. As a result, the First Circuit held that exclusion of the numbers activity eliminated a "discrete basis for the imposition of criminal liability." *Id.*[21]

In *United States v. Alberti, supra*, Alberti was charged in a single-count indictment

with knowingly making false material statements under oath before a grand jury in violation of 18 U.S.C. § 1623 (1970). After the jury returned a verdict of guilty, Alberti moved for a new trial on the ground that newspaper publicity had a prejudicial effect on the jury's deliberations. In granting his motion, the court struck from the indictment a number of specifications of perjury it ruled could not independently support a conviction. We found the district court's order appealable under § 3731 because it had the "practical result" of dismissing a substantial part of the single count—in short, the allegations stricken could have independently supported a conviction.

Finally, in *United States v. Margiotta, supra*, we had an earlier opportunity to consider the reach of § 3731. In denying Margiotta's pretrial motion to dismiss Count One, the mail fraud count, the district court ordered the Government to elect a single mailing from the numerous mailings described in the Count. In an opinion by Judge Newman, we reasoned that each of the mailings is a "discrete basis" of criminal liability—or rather an independent predicate—on which a conviction could be based. We found the district court's order appealable pursuant to § 3731. Judge Sifton's ruling discussed in the earlier *Margiotta* opinion implied that every one of the mailings was a valid basis for conviction because he allowed the Government to elect to proceed on any one of them. Consequently, in "dismissing" all the mailings other than the one the Government would have selected, the order eliminated independent grounds on which a conviction could be obtained.

■ In each case, the Government challenged a ruling which struck factual allegations or excluded evidence that could lay an independent basis for a criminal penalty. From the holdings in these cases a govern-

---

**21.** The Supreme Court found that the district court's action was an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. As a result, even if the ruling was a "dismissal," the judgment of acquittal would bar any further prosecution and hence preclude

appellate review of the trial court's error. *Sanabria v. United States*, 437 U.S. 54, 68–69, 97 S.Ct. 2170, 2180–81, 57 L.Ed.2d 43 (1977). In the instant case the double jeopardy doctrine does not apply because of the jury's disagreement necessitating a mistrial.

ing principle may be distilled—when an order precludes consideration of an independent ground for a conviction, even if that predicate is not formally pleaded as a separate count in the indictment, the order is appealable by the Government under § 3731, where the double jeopardy clause does not prohibit further prosecution.

■ Measured against these guidelines, those portions of Judge Sifton's order stating that the jury instructions delivered at the first trial would be followed at retrial do not operate as a dismissal. The Government argues, however, that the district court's unitary instruction that the jury had to find a breach of fiduciary duty to convict Margiotta under Count One had the effect of striking a "discrete basis for the imposition of criminal liability" from Count One. Such an instruction, the Government asserts, eliminated the distinction between the two "prongs" of Count One—defrauding citizens of their right (1) to have their governmental affairs conducted free from corruption and (2) to have Margiotta's honest participation in those affairs. Thus, the Government claims, if it is correct that a breach of fiduciary duty for only one of these "prongs" must be proved, the merits of which we do not reach, Judge Sifton's failure to distinguish the two "prongs" had the effect of eliminating a possible basis for conviction.

Such is not the consequence. The two "prongs" are not separate grounds but rather are mirror images of the single scheme of mail fraud set forth in Count One. By allegedly failing to participate in the governmental affairs of Nassau County and the Town of Hempstead in an honest and faithful manner (prong # 2), the defendant deprived the citizens of Town and County of the right to have their governmental affairs conducted without corruption (prong # 1). Consequently, the two "prongs" of Count One are not independent grounds but are alternate descriptions of the single fraudulent scheme:[22] the distribution of insurance commissions on municipal properties to brokers and others Margiotta designated. As a result, Judge Sifton's unitary jury instruction is quite different from the appealable orders in the cases cited to us and referred to above. As we have noted, the orders in those cases eliminated factual allegations of "discrete" acts that could give rise to separate criminal liability. In contrast, the order in this case merely construed one of the requisite legal elements constituting the mail fraud offense. While the jury instruction increased the Government's burden of proof beyond that which it prefers to carry, the instruction did not preclude consideration of any discrete acts or factual predicate which could give rise to criminal liability. The instruction can hardly be viewed as a dismissal since the jury may convict the defendant if it finds that the Government meets its burden of proof respecting fiduciary duty.[23]

---

**22.** Viewing the two "prongs" essentially as restatements or alternate descriptions of a single scheme of fraud renders irrelevant the Government's argument that the two prongs are independent bases for liability on the ground that the mail fraud cases establish a requirement of a breach of fiduciary duty for one prong but not another. This argument essentially looks to the merits of the Government's contentions regarding the jury instructions as a means of determining appealability. We reject the Government's approach because it would be a perverse result to determine appealability by an inquiry into the merits of the appellant's case. We have stated that we express no views on the merits. The Government, in making the argument that the order is appealable because the court's charge concerning fiduciary duty eliminates an independent basis for obtaining a conviction, would have us depart from this position.

**23.** Viewed in this light, those portions of Judge Sifton's order concerning the jury instructions merely present the Government with a heavier burden of proof than desired, a problem frequently encountered in litigation. Allowing the Government an interlocutory appeal from adverse decisions on jury instructions in this case would recognize a category of appealable rulings in which it would be difficult to draw lines. Furthermore, adopting the Government's position in this context may well have a chilling effect upon pretrial hearings and orders, which frequently serve to expedite a final and early resolution of troublesome points in a case. Even here, we have expedited the appeal and decision so that the second trial, now scheduled

■ Moreover, that portion of the order which stated that, at the second trial, the jury will be instructed that willful concealment is an element of the mail fraud offense alleged in Count One is also not appealable under § 3731.[24] The Government argues that this Court has jurisdiction to review this portion of the order because the court's instruction strikes an independent basis for imposition of criminal liability.[25] Rather than eliminating discrete grounds or any factual predicate for a criminal penalty, this portion of the order merely enumerates the requisite legal elements of the mail fraud offense the Government must prove to obtain a conviction.

■ Finally, the Government seeks review of that portion of the district court's order concerning Counts Two through Six. These counts charged the defendant with violating the Hobbs Act by inducing the consent of the Williams Agency under color of official right and the wrongful use of fear. The Government asserts that Margiotta, although he is not a public official, could be found guilty as a principal of extortion under color of official right because of his influence in the appointment process. The district judge declined to instruct the jury that Margiotta could be found guilty, as a principal, of obtaining money under

color of official right. Instead, the court instructed the jury that he could be found guilty by operation of 18 U.S.C. § 2(b), which establishes aider and abettor liability: "[w]hoever wilfully causes an act to be done which if directly performed by . . . another would be an offense against the United States is punishable as a principal." 18 U.S.C. § 2(b) (1976). Aider and abettor activity, then, is made punishable under 18 U.S.C. § 2(b) to the same extent as activity of a principal. As a result, the court's jury instruction concerning the Hobbs Act charges does not strike from the case an independent basis of liability and is therefore not appealable under § 3731.

### III.

■ The Government also challenges three rulings excluding certain evidence that Judge Sifton indicated will remain unchanged at retrial. The order based on evidentiary rulings is appealable. 18 U.S.C. § 3731 (1976) ("order(s) . . . suppressing or excluding evidence"); *United States v. Horwitz*, 622 F.2d 1101 (2d Cir. 1980), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 854, 66 L.Ed.2d 799 (1981) (conditional form of suppression order does not deprive Court of Appeals of appellate jurisdiction under 18 U.S.C. § 3731).[26]

---

for early November, may proceed without delay.

**24.** See note 12 *supra*.

**25.** The Government also makes the argument that on the basis of the discretionary doctrine of pendent jurisdiction the Court has jurisdiction to review that part of Judge Sifton's order stating that, at retrial, the jury will be instructed that willful concealment is an element of mail fraud. See *Moore's Federal Practice*, ¶ 110.25[1] (2d ed. 1973). The Government's contention is that if the order is appealable under § 3731 because the judge required the jury to find some kind of special or fiduciary relationship, we should also find appealable the portion of the order stating that willful concealment is an element of the offense. Since the two issues are closely related, the argument continues, it would be unwise to decide one but not the other. But we have decided that the order is not appealable on the first aspect of the jury instructions. Accordingly, it is not necessary for us to decide whether the second

aspect is reviewable because of pendent jurisdiction.

**26.** It should be noted that the Criminal Appeals Act authorizes Government appeals from an order suppressing or excluding evidence only when the order is entered before the defendant is put in jeopardy. 18 U.S.C. § 3731 (1976). This double jeopardy restriction prevents piecemeal appeals from interlocutory orders during trial. In this case, the order was entered after a mistrial was declared when the jury announced it was unable to reach a verdict, and before the scheduled second trial. As a result, this appeal is not precluded by the double jeopardy provision. Accordingly, our decision today will not encourage countless appeals by the Government from interlocutory evidentiary rulings during trials for that would trigger the double jeopardy bar; nor will it subvert the longstanding federal preference for appeals from final judgments. *Cf.* 28 U.S.C. § 1292(b) (1976) (Court of Appeals has discretion to permit an appeal from an interlocutory order *in a civil action* not otherwise appealable under this

We turn now to the merits and affirm those portions of the order which state that the court will follow these evidentiary rulings at retrial.

### A.

■ At trial, to rebut Margiotta's defense of good faith, the Government sought to introduce evidence that, during the period of time when many of the acts alleged to be part of the insurance commission fraud were committed, Margiotta was also engaged in a similar scheme—approval of salary increases for certain employees of the Town of Hempstead on the condition that they contribute 1% of their salaries to the Republican Party. While evidence of prior similar acts may be relevant to determine a defendant's intent in bribery and extortion cases, *see United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978); *United States v. Baneth*, 155 F.2d 978, 980 (2d Cir. 1946), trial courts exercise broad discretion in determining the admission of such evidence. *See United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978); *United States v. Gubelman*, 571 F.2d 1252 (2d Cir.), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2853, 56 L.Ed.2d 790 (1978). In deciding whether evidence of prior similar acts should be admitted, trial courts should undertake a two-step inquiry under Rules 403 and 404 of the Federal Rules of Evidence. First, the trial court should determine under 404(b) whether the evidence offered has relevance to an issue at trial other than for the purpose of "prov[ing] the character of a person in order to show that he acted in conformity therewith." Second, if the evidence is relevant, the court should determine whether the probative value of the evidence is substantially outweighed by the danger of prejudice to the defendant. *United States v. Williams*, 577 F.2d 188, 191 (2d Cir.), *cert.*

denied, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Benedetto, supra*, 571 F.2d at 1248–49. When the trial judge has made the requisite analysis, his broad discretion will not be lightly overturned. *United States v. Deaton*, 381 F.2d 114, 118 (2d Cir. 1967). Judge Sifton undertook a careful analysis, noting that the probative value for rebutting the defense of good faith to extortion was slight in view of Margiotta's contentions that the 1% salary arrangement was a patronage practice conducted openly and in good faith.[27] As a result, Judge Sifton acted within his discretion in concluding that the probative value of this evidence was substantially outweighed by the potential unfair prejudice to the defendant.

### B.

The second category of evidence excluded by the district court consisted of statements made by Margiotta's attorneys in a memorandum submitted to the Attorney General to persuade the Department of Justice that Margiotta should not be indicted. These statements concerned the reasons for preparing the inspection reports and the circumstances in which payments were made to certain individuals pursuant to the insurance commission patronage system. According to the Government, the statements in this memorandum were admissible because they were inconsistent with the defendant's trial testimony. Margiotta, however, asserts the memorandum was properly excluded because the statements it contained were made in an interview with Government attorneys pursuant to an immunity agreement.

■ Statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney. *See* F.R.Evid. Rule

---

section only when the district judge states in writing that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation.") (emphasis added).

27. *Memorandum and Order* dated June 1, 1981, in Jt.App., at 25–26.

801(d) (prior statement not excludable as hearsay if statement was authorized by the party or is "a statement by his agent or servant concerning a matter within the scope of his agency or employment"); *Vaccaro v. Alcoa Steamship Co.*, 405 F.2d 1133, 1137 (2d Cir. 1968); *United States v. Dolleris*, 408 F.2d 918 (6th Cir.), *cert. denied*, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969). Judge Sifton ruled that the Government could not make use of these statements, not because the attorneys had no authority to make them, but because the Government offered no evidentiary basis for concluding that the statements originated elsewhere than in the interview or that Margiotta had waived the immunity afforded him. The immunity agreement encompasses both direct and indirect use of information obtained at the meeting. Furthermore, there is a presumption against the waiver of constitutional rights, *see Glasser v. United States*, 315 U.S. 60, 70–71, 62 S.Ct. 457, 464–65, 86 L.Ed. 680 (1942), and for an effective waiver, there must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 28 L.Ed. 1461 (1938), cited in *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966). In light of the broad language of the immunity agreement and the absence of clear evidence of a waiver of the defendant's privilege against self-incrimination, we find that Judge Sifton acted well within his discretion in excluding the statements contained in the memorandum.

## C.

The district court also excluded evidence that the defendant's conduct violated New York law regarding the purchase and sale of public office. Section 17–158(3) of the New York Election Law provided that "any person" who "[m]akes, tenders, or offers to procure, or cause any . . . appointment for any *public office or place*, upon the payment of any valuable consideration, or upon an understanding or promise thereof," was guilty of an offense. (emphasis added). Even if the position of Broker of Record for the Town of Hempstead or the County of Nassau were a "public office or place" within the meaning of this statute,[28] Judge Sifton acted well within his discretion in concluding that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Fed.R.Evid. 403. Since there was no showing that the defendant was aware of the statute, admission of the evidence of any violation of the statute would be of slight probative value in determining defendant's intent or lack of good faith. Judge Sifton correctly noted the danger that the jury might infer a violation of the federal laws merely from evidence of a violation of state law.[29]

Accordingly, we dismiss the Government's appeal from those portions of the order relating to the jury instructions, and we affirm the district court's order on the evidentiary rulings.

---

**28.** Judge Sifton concluded that the position of Broker of Record for the Town of Hempstead and the County of Nassau is not a "public office or place" within the meaning of the New York statute.

**29.** *Memorandum and Order, supra* note 27 at 24–25.