# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, M.K. JAMISON**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**RUBEN VARGAS**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201300426**
**Review Pursuant to Article 62(b), Uniform Code of Military Justice,**
**10 U.S.C. § 862(b)**

**Military Judge**: LtCol N.K. Hudspeth, USMC.
**Convening Authority**: Commanding Officer, Headquarters and Support Battalion, Marine Corps Installations East, Marine Corps Base, Camp Lejeune, NC.
**For Appellant**: Maj David N. Roberts, USMC.
**For Appellee**: Maj Richard A. Viczorek, USMCR.

**28 February 2014**

---
## OPINION OF THE COURT
---

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

MITCHELL, Senior Judge:

In the case *sub judice*, the Government appears in the role of the appellant pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862, which authorizes Government appeals in certain circumstances. The Government requests this court vacate the military judge's decision to deny the Government's request for an overnight recess and then *sua sponte* resting the Government's case over its objection.

## I. Background and History

The appellee's case was referred for trial by special court-martial on 4 February 2013. He was charged with one specification of assault consummated by a battery and one specification of endangering the mental health, physical health, safety, and welfare of minor children[1] in violation of Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928 and 934. After arraignment on 25 February 2013, multiple continuances and preliminary court proceedings pursuant to Article 39(a), UCMJ, occurred from February to July 2013, and on 12 July 2013 the appellee elected to be tried by members with enlisted representation. Record at 8, 50.

The appellee's trial commenced on 22 October 2013 and, anticipating that the trial would last three days, was docketed accordingly. The day before the appellee's trial commenced, the trial counsel informed the civilian defense counsel that he intended to call four witnesses on the first day of trial and his final three witnesses the next day. The civilian defense counsel did not object to the manner in which the Government proposed to present its case-in-chief.

On the first day of trial, after empanelment of the members, the Government called its first four witnesses: a percipient witness and the three military police officers who responded to the 911 call. Due to scheduling conflicts with the 911 operator and the physician who treated the victim of the alleged assault, and the fact that the Naval Criminal Investigative Service (NCIS) special agent who took the appellee's statement was deployed and traveling back to the United States from Afghanistan, the trial counsel scheduled those witnesses to be called the next day.

On day one of the appellee's trial, empanelment of the members was completed by noon and the testimony of the Government's first four witnesses concluded at approximately 1400. After a brief recess, the trial counsel asked the military judge to "continue the trial and place (sic) in recess until tomorrow morning[,]" explaining that the last of the Government's witnesses would not be available until then. *Id*. at 184. Civilian defense counsel opposed the motion. *Id.* at 186-87. The military judge denied the motion and asked the trial counsel whether he had any other evidence to present or intended to rest his case. *Id.* at 188. Trial counsel informed the military judge that he did not intend to rest his case at

---

[1] Charge II and its sole specification were withdrawn by the trial counsel acting on behalf of the convening authority on 22 October 2013.

that time.  *Id.*  After a brief recess, in an Article 39(a) session, the trial counsel asked the military judge to reconsider the Government's request to recess trial until morning.  *Id*. at 189-90.  The military judge again denied the motion.  *Id.* at 190-91.  Afterwards, the following exchange occurred between the military judge and the counsel:

> MJ: So your motion is denied.  Do you have anything else?
>
> TC: Yes, ma'am.  Given that ruling by the military judge, at this time, the government intends to offer – to exercise its right to an interlocutory appeal under Article 62 of the Uniform Code of Military Justice. The government intends to provide 72-hour written notice to the military judge upon recess from this court.
>
> MJ: You may do so.  But, I am not obliged to continue the case while you do that, and I am declining to exercise that continuance so that you may do that. You may do it simultaneously with this case, but we are going to proceed.

*Id.* at 191.

After the military judge had the members brought back into the courtroom, the following colloquy transpired between the military judge and trial counsel:

> MJ: Government, do you have any additional evidence to present?
>
> TC: Ma'am, we do not have any additional evidence at this time -- um, we do not have any additional evidence at this time.
>
> MJ: Okay. Are you resting then?
>
> TC: No, ma'am.
>
> MJ: You may present any additional evidence or you may rest.
>
> TC: Ma'am, again the government intends to offer additional evidence.  However, we do not have that on us at this time.  We do not intend to rest our case at this time, ma'am.

3

MJ: Okay. Your case is rested if you have no additional evidence to present at this time. I have already denied any continuance in this case. With that, Defense?

CC: Defense rests.

*Id.* at 192.

After the defense rested its case, the civilian defense counsel requested an Article 39(a) session and made a motion under RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), averring that the evidence presented by the Government was insufficient to sustain a conviction. *Id.* at 193. After hearing argument from both sides, the military judge denied the motion. *Id.* at 194. At the conclusion of the Article 39(a) session, the military judge brought the members back into the courtroom and excused them from the courtroom until 1600. *Id.* When the court was again called to order, the military judge summarized an intervening R.C.M. 802 conference at which the trial counsel cited the provisions of R.C.M. 908(b)(1). The military judge then stated that the court should have been delayed until the interlocutory appeal could be decided by the appellate court.[2] *Id.* at 201-02. Prior to the military judge staying the proceeding, the trial counsel had the following conversation with the military judge:

TC: Yes, ma'am, I would just – the Government would seek a point of clarification as to where we are in the proceedings. I know that the government raised the issue and intends to provide notice.

MJ: I've denied your continuance request.

TC: Yes, ma'am.

MJ: Um –

TC: We were still in our case in chief, I believe ma'am –
MJ: Yes.

---

[2] R.C.M. 908(b)(1) states: *Delay*. After an order or ruling which may be subject to an appeal by the United States, the court-martial may not proceed, except as to matters unaffected by the ruling or order, if the trial counsel requests a delay to determine whether to file notice of appeal under this rule. Trial counsel is entitled to no more than 72 hours under this subsection.

        TC:  And it is the court's position that we were still
        in the government's case in chief.

        MJ:  Right.  You can put that in your appeal.

        TC:  Yes, ma'am.

        MJ:  Uh, my, uh, and the court can tell me to un-ring
        the bell.  But, at the point of this trial, we are at
        findings instructions.

*Id.* at 204.

     The military judge then had the members brought back into
the courtroom, explained to them that the court proceeding was
going to be delayed, and excused them until further notice.  *Id*.
at 205-06.  At approximately 1800 that evening, the trial
counsel informed the military judge and the civilian defense
counsel that the Government would no longer be seeking an
interlocutory appeal of the military judge's denial of the
motion for a recess.  He further requested an Article 39(a)
session for the next morning.

     The following morning, 23 October 2013, the military judge
called an Article 39(a) session in response to the Government's
written motion to reconsider her decision to rest the
Government's case.  Appellate Exhibit XLIII.  During this
Article 39(a) session, the trial counsel proffered the testimony
of the Government's three remaining witnesses and the relevance
to its case.  The defense stipulated to the proffer of
testimony.[3]  Record at 214.  The military judge made findings of
fact and reaffirmed her earlier decision denying the
Government's request to recess the trial.[4]  The Government gave
the required notice and timely filed this appeal.


                        **II. The Issues**

---

[3] The stipulation of proffered testimony was limited to the motion the
Government filed asking the military judge to reconsider her earlier decision
to rest the Government's case.

[4] The military judge stated her findings of fact on the record at pages 217-
23.  We note that unless clearly erroneous, we are bound by the military
judge's findings of fact.  In the case at bar, the Government does not
dispute them; we find no clear error in the military judge's findings of
fact; and, we therefore adopt them as our own.

We are confronted with two issues, which we will address in the following order:

1. Are the trial judge's actions appealable under Article 62, UCMJ, and R.C.M. 908?

2. If so, did the trial judge abuse her discretion in denying the recess and resting the Government's case?

We answer both questions in the affirmative.

## III. Jurisdiction

We necessarily begin with the question as to whether this court has jurisdiction to review the Government's appeal under Article 62, UCMJ. Limited in scope, Article 62 provides in part that the United States may appeal an order or ruling of the military judge that terminates the proceedings with respect to a charge or specification, or which excludes evidence that is substantial proof of a fact material in the proceeding. This provision ensures that the Government has the same opportunity to appeal adverse trial rulings that the prosecution has in federal civilian criminal proceedings. *United States v. Lopez de Victoria*, 66 M.J. 67, 71 (C.A.A.F. 2008).

In the case *sub judice*, the military judge did not terminate the proceedings; we therefore focus our analysis as to whether the military judge's ruling excluded evidence that is substantial proof of a fact material in the proceeding.

## A. Analysis

In military jurisprudence, the commonly-held understanding of the term "exclusion of evidence" usually involves a situation where the military judge has made a ruling at trial that certain testimony, documentary evidence, or real evidence is inadmissible. The language of Article 62 itself suggests that Congress intended the term "excludes" to be narrowly construed and applied only to those rulings by the military judge that explicitly exclude or suppress evidence. The legislative history of Article 62, however, does not reflect that Congress intended the word "excludes" to be limited to rulings on admissibility. Moreover, Congress intended that Article 62 parallel, to the extent practicable, 18 U.S.C. § 3731 (1984), which permits appeals by the United States in federal civilian

6

prosecutions.[5] *See United States v. Brooks*, 42 M.J. 484, 486 (C.A.A.F. 1995) ("Article 62 was intended by Congress to be interpreted and applied in the same manner as the Criminal Appeals Act, 18 USC § 3731" (citations omitted)).

While Congress intended 18 U.S.C. § 3731 and Article 62 to be interpreted and applied in the same manner, the former provision mandates a more liberal application. It specifically states that "[t]he provisions of this section shall be liberally construed to effectuate its purposes"; Article 62 contains no such language or mandate. Due to this distinction in language, the Court of Appeals for the Armed Forces (CAAF) has indicated that it would be inappropriate to apply the liberal construction mandate of 18 U.S.C. § 3731 when interpreting Article 62, and further charged that cases interpreting the parallel provisions of that code section should be used as guidance and only to the extent consistent with an interpretation of Article 62 that is not dependent upon the liberal construction admonition. *United States v. Wuterich* 67 M.J. 63, 71 (C.A.A.F. 2008). Because the legislative history makes clear that Congress intended for Article 62 appeals to be conducted "'under procedures similar to [those governing] an appeal by the United States in a federal civilian prosecution,'" military courts have looked to federal precedent for guidance on this question. *United States v. Browers,* 20 M.J. 356, 359 (C.M.A. 1985) (citation and footnote omitted).

Article III courts have construed the scope of 18 U.S.C. § 3731 by utilizing an "effects" test. This test focuses on the effect of a court order, rather than its facial categorization or its title. *United States v. Margiotta,* 662 F.2d 131 (2d Cir. 1981); *United States v. Humphries,* 636 F.2d 1172, 1175 (9th Cir. 1980). The effects test is not all-inclusive and is limited to those cases in which the military judge's ruling has a "direct rather than incidental effect on the exclusion of evidence." *Wuterich*, 67 M.J. at 75 (citation omitted). The CAAF in *Wuterich* established that "the pertinent inquiry is not whether the court has issued a ruling on admissibility, but instead

---

[5] 18 U.S.C.S. § 3731. Appeal by United States. "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment . . . from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding . . . from a decision or order, entered by a district court of the United States granting the release of a person charged with or convicted of an offense . . . . The provisions of this section shall be liberally construed to effectuate its purposes."

whether the ruling at issue 'in substance or in form' has limited the 'pool of potential evidence that would be admissible.'"  *Id.* at 73 (quoting *United States v. Watson*, 386 F.3d 304, 313 (1st Cir. 2004)).  That is precisely the Government's contention in the case at bar.

The appellee, by contrast, avers that the military judge did not rule that the three witnesses could not testify at trial and that she therefore did not deprive the Government of that opportunity.  Instead, the appellee argues that the military judge's ruling had an "incidental" rather than direct impact on the Government's case and is therefore not subject to appeal under Article 62.  Appellee's Brief of 23 Dec 2013 at 15. Finally, the appellee contends that the witnesses "were not necessary for any elements of the alleged offense," as the four witnesses called by the Government on the first day of trial "provided enough evidence to overcome the defense motion for a finding of not guilty" in accordance with R.C.M. 917.  *Id* at 16. We find both of the appellee's arguments unpersuasive.

At first glance, the *Browers* case cited above appears to weaken the Government's position as that case involved a continuance request submitted by Government counsel due to witness unavailability, which was denied by the trial judge.  On appeal, the Court of Military Appeals held that the denial by the military judge did not meet the jurisdictional requirements of Article 62.[6]  That decision, however, did not establish a bright-line rule that a continuance request denied by a trial judge *per se* lacks jurisdiction under Article 62.  In *Browers*, the Government was seeking a 16-day continuance to find two key witnesses, one who was on convalescent leave and the other who was absent without leave (AWOL).  The witnesses' appearance at the court-martial was speculative at best (assuming the Government could locate the AWOL soldier), and the decision by the military judge not to continue the matter was a "case management" decision determined to be well-within his authority.[7] We also note that in *Browers* the Government requested a

---

[6] In *Browers*, the United States Court of Military Appeals reversed the United States Army Court of Military Review and found that the Government was not entitled to appeal the denial of a continuance request by the lower court.

[7] Similarly, in *Watson* (cited in *Browers*), the United States Court of Appeals for the First Circuit held that it lacked jurisdiction, under 18 U.S.C. § 3731, to hear the interlocutory appeal of a case where the Government's witness was deported by the United States Immigration and Naturalization Service and the trial judge, in denying the motion for a continuance, indicated that continuing the case until the witness could be deposed could result in an inordinate delay.

continuance prior to presentation of any evidence, a signification distinction from the instant case. *Browers*, 20 M.J. at 356-60.

Another critical distinction between *Browers* and the case at bar is that the *Browers* decision to deny the continuance was an issue of scheduling and did not have the direct result of excluding evidence. *Browers,* 20 M.J. at 356-60. Such was not the case here. By denying the trial counsel's motion for a recess until the next morning and then *sua sponte* resting the Government's case, the military judge effectively denied the Government the opportunity to present critical testimony that is substantial proof of a fact material in the proceeding. Contrary to the intimation of the military judge, this wasn't a case of the Government seeking a recess because it was not ready for trial. Quite to the contrary, the record reflects that the trial was well in progress, moving along at a faster pace than anticipated by the trial counsel. The brief recess requested by the trial counsel from 1400 until the following morning to accommodate nonlocal and civilian witnesses would have resulted in little or no impact on the trial schedule as this court-martial was already docketed for three days. In fact, the trial was seemingly progressing ahead of schedule. The relevance and importance of these witnesses to the prosecution's case was readily apparent from the trial counsel's proffer. Finally, we note that unlike in *Browers*, in the case at bar the members had been empaneled and evidence had been presented, thus making withdrawal of the charges and re-referral impermissible unless the withdrawal was "'necessitated by urgent and unforeseen military circumstances.'" *See United States v. Easton*, 71 M.J. 168, 177 (C.A.A.F. 2012) (quoting R.C.M. 604(b)).[8]

Here, the Government planned reasonably for the presentation of evidence and scheduled its witnesses's appearances accordingly. That presentation of evidence completed earlier than expected on the first day of trial does not justify the extreme action taken by the military judge. Not

---

[8] R.C.M. 604(a) states that the convening authority or a superior competent authority may for any reason cause any specifications to be withdrawn from a court-martial at any time before findings are announced. R.C.M. 604(b) allows charges which have been withdrawn from a court-martial to be referred to another court-martial unless the withdrawal was for an improper reason. *See United States v. Underwood*, 50 M.J 271, 276 (C.A.A.F. 1999) (convening authority dismissed and re-referred after military judge failed to grant the Government's continuance to secure out of state witness.) Charges withdrawn after the introduction of evidence on the general issue of guilt may be referred to another court-martial only if the withdrawal was necessitated by urgent and unforeseen necessity.

only were the last three witnesses available to testify the next day, but they were intentionally scheduled by the Government on that day due to schedule conflicts and travel considerations. The scheduled witnesses' testimony was well-within the three-day timeframe for which the case was docketed. The appellee's trial was proceeding ahead of schedule so there was little concern for undue delay or interference with the trial schedule.

Finally, we summarily dismiss the appellant's argument that the witnesses in question were not necessary to the Government's case because the military judge denied the defense motion for a finding of not guilty in accordance with R.C.M. 917. We note that the quantum of proof required for the Government to withstand an R.C.M. 917 motion was "some evidence," vice the proof beyond a reasonable doubt required for a conviction.

## B. Conclusion

We reject the appellee's assertion that this court lacks jurisdiction because the military judge never ruled that the Government's three remaining witnesses could not testify and therefore there was no exclusion of evidence. We follow the example of the Article III courts' interpretation of 18 U.S.C. § 3731, as adopted by the CAAF in *Wuterich*, and apply the effects test. Applying the effects test to the case at bar, we hold that the trial judge's ruling in denying the brief recess so that witnesses scheduled to be heard the next day could testify and then *sua sponte* resting the Government's case, had the direct effect of limiting "'[t]he pool of potential evidence that would be admissible'" and excluding evidence that was substantial proof of a material fact." *Wuterich*, 67 M.J. at 73 (quoting *Watson*, 386 F.3d at 313.) We therefore answer the first issue of jurisdiction under Article 62 in the affirmative.

### IV. Denial of the Recess

Having resolved the question of whether this court has jurisdiction to hear this appeal, we turn now to the question of whether the military judge abused her discretion in refusing to allow an overnight recess for the Government to produce their final three witnesses and instead resting the case on behalf of the Government over the trial counsel's protest. Although the facts at bar involve not a continuance, but instead an overnight recess, we turn to the law involving continuances for guidance in this relatively novel situation created by the military judge, to determine whether she abused her discretion.

10

As a general rule, the decision whether to continue a trial to enable a party to procure an absent witness rests within the sound discretion of the trial court. *See* R.C.M. 906(b)(1) and Article 40, UCMJ. Continuances for the production of material witnesses are looked upon with favor, however, and the exercise of sound discretion requires that they be granted upon a showing of reasonable cause. *United States v. Daniels,* 28 C.M.R. 276, 279 (C.M.A. 1959). A judge's decision will not be disturbed on appeal absent a clear showing that such discretion has been misused. *United States v. Weisbeck,* 50 M.J. 461, 464 (C.A.A.F. 1999). "An 'abuse of discretion' exists where 'reasons or rulings of the' military judge are 'clearly untenable and . . . deprive a party of a substantial right such as to amount to a denial of justice'; it 'does not imply an improper motive, willful purpose, or intentional wrong.'" *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987).

## A. Analysis

In order to guard against bad faith and unwarranted delays, the military judge must consider many factors before ruling on a request for continuance for purposes of securing a witness. The factors this court uses to determine whether a military judge abused his or her discretion by denying a continuance are the same ones adopted by the CAAF in *United States v. Miller*, 47 M.J. 352 (C.A.A.F. 1997), to include: "'surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.'" *Id.* at 358 (quoting F. GILLIGAN AND F. LEDERER, COURT-MARTIAL PROCEDURE §18-32.00 at 704 (1991) (footnotes omitted)). Applying the *Miller* factors to the case at bar, we conclude as follows:

**Lack of surprise**: Civilian defense counsel was well-aware that the Government intended to call the witnesses in question on day two of the three day trial.

**Timeliness of the request**: The motion for a recess was promptly made by the trial counsel after examination of his first four witnesses.

**Other continuance requests**: Multiple continuance requests were made and granted in this case. Again, this was merely a request for a recess for the Government witnesses to testify on the day

11

they were scheduled to do so and well-within the three-day period for which the case was docketed.

**Good faith of the moving party**: The appellee does not aver, and the military judge did not find, that the Government was acting in bad faith. As stated above, the trial counsel anticipated that the empanelment of the members and the testimony of its first four witnesses would take longer than it did. The trial progressed more rapidly than anticipated.

**Length of request and prejudice**: The Government requested a recess until the next morning – a matter of a few hours. The appellee has not demonstrated that he would have been prejudiced by the military judge had she granted the recess.

**Prior notice**: Prior to the trial commencing, the defense was given notice that the three Government witnesses would testify on the second day of trial.

**Possible impact on verdict**: The Government considered these witnesses critical to its case: the 911 operator was needed to lay the foundation to admit the 911 tape into evidence; the attending physician was needed to lay the foundation to admit the pictures of the victim of this alleged assault and to testify as to the extent of the victim's injuries; and the NCIS agent was needed to lay the foundation for a statement from the appellant in which he made admissions of guilt.

In this case, we conclude that the expected testimony of these absent witnesses was material, noncumulative, and of critical importance to the Government's case-in-chief. The expected testimony of these witnesses would have a significant impact on whether the Government could prove its case beyond a reasonable doubt.

Each of these factors clearly favors the Government.

In light of the circumstances of this case, we conclude that the military judge's action in denying the Government a brief recess during trial and then *sua sponte,* over objection, resting the Government's case was a clear abuse of discretion.

**B. Conclusion**

The military judge's ruling is vacated. The record of trial is returned to the Judge Advocate General for remand to

the convening authority and delivery to the military judge for further proceedings not inconsistent with this opinion.

Judge FISCHER and Judge JAMISON concur.

For the Court



R.H. TROIDL
Clerk of Court