JUSTICE HUNT
delivered the opinion of the Court.
Appellant, Jonathan R. Kohne, appeals from an order of the District Court, Second Judicial District, Silver Bow County, denying his motions for New Trial, or to Amend Judgment or to Set Aside Verdict and Judgment and for Judgment Not Withstanding Verdict.
We reverse.
Appellant raises several issues. However, we hold the following issue to be dispositive:
Whether statements made by defense counsel in closing argument admitting negligence constitute a judicial admission dispositive on the issue of negligence.
On June 17, 1988, appellant John Kohne, age 21, and respondent Roy Yost, Jr., age 13, engaged in a game of combat with B.B. guns. Initially, Kohne and Yost were to help Kohne’s mother move to a new residence. Bored with the task, Kohne and Yost decided to shoot B.B.s at some pop cans, an old jeep battery, and windows. The testimony is unclear as to who suggested the “combat” game between the two participants. However, they did establish three rules. They were not to pump the B.B. guns more than five times, they were not to shoot above the shoulders, and they were to say “ouch” when they were hit by a B.B. The game ensued for several minutes outside the home until Kohne’s sister arrived.
The combatants stopped playing and demonstrated their bruises to Kohne’s sister. She scolded her brother for playing with B.B. guns instead of packing boxes. After a few minutes, they went inside the *111 house to the living room. Yost walked to the back bedroom, while Kohne and his sister continued to argue in the living room and kitchen.
After a few more minutes, Kohne walked through the kitchen towards the back bedroom of the house, where Yost was hiding with his B.B. gun. Kohne and his sister testified that as he approached the back bedroom, he was carrying boxes. Yost testified Kohne was carrying a B.B. gun. Yost was standing next to the bedroom door leading to the outside of the residence. John Kohne was standing next to the doorway leading from the kitchen to the bedroom. He saw Yost pointing the B.B. gun at him. The B.B. gun went off and shot Kohne in the lens of his left eye. Yost immediately apologized and stated he thought the safety was on. Kohne suffered extensive injuries to the eye, including permanent loss of the lens and permanent injury to the cornea and iris, as well as other physical and psychological damage.
Defense counsel originally claimed that Yost was firing in self-defense and that Kohne’s intentional and malicious conduct constituted battery. Plaintiff was granted a directed verdict on defendant’s counterclaim. At the close of all the evidence, defense counsel was allowed to amend his counterclaim to a negligence and comparative negligence theory.
During closing argument, defense counsel made the following admissions:
“It’s our position that your decision on Roy Yost’s negligence depends upon whether you find that Roy Yost was more negligent on the 17th of June than John Kohne.”
(Transcript, p. 473.)
“I submit to you that both of them are negligent. You’re not going to have a lot of trouble with that very first question of negligence because, you bet, playing the game in and of itself, they were negligent....”
(Transcript, pp. 478-479.)
“[Tjhrow both sides of the lawsuit out, no liability, none. And the way you get there is you find that John Kohne being an adult, 21 years old, he knew better, he should have known better and the moment that the game started, he should have stopped it. And so when the game starts, he’s more at fault, he’s not equally at fault, he’s more. He’s 55, 60, 75 percent at fault for this game because when the game started and when the game continued, John Kohne continued it.”
(Transcript, p. 492.)
*112 “He was at fault because he played the game too, but he’s the 13-year-old boy and this man that started it all, he was more at fault.”
(Transcript, p. 497.)
The jury found no negligence on the part of either the defendant or plaintiff. Plaintiff’s counsel moved for judgment notwithstanding the verdict. The District Court denied the motion. Plaintiff’s counsel timely filed motions for a New Trial, or to Amend Judgment or to Set Aside Verdict and Judgment and for Judgment Not Withstanding Verdict on the basis, among other issues, that there was insufficient evidence to support the verdict, and that defense counsel made admissions in his closing argument that defendant was negligent. In a memorandum and order dated August 14,1990, the District Court denied plaintiff’s motions. It is from this order that plaintiff appeals.
Previously, we have held that counsel’s admissions are binding upon the client.
“A party may appear in person or by an attorney; but, when he appears by attorney, the latter while acting as such has control and management of the case, and his sayings and doings in the presence of the court concerning the trial of the cause are the same as though said and done by the party himself.”
State ex rel. Eden v. District Court (1939), 109 Mont. 263, 268, 95 P.2d 447, 449.
Judicial admissions are important because they have the effect of a confessory pleading. 9 Wigmore, Evidence, § 2588 (Chadbourn rev. 1981). A judicial admission is an express waiver made in court by a party or his attorney “conceding for the purposes of the trial the truth of some alleged fact.” Wigmore at § 2588. The main characteristic of a judicial admission is the conclusive effect upon the party making the admission. No further evidence can be introduced to prove, disprove, or contradict the admitted fact. Wigmore at § 2590.
Judicial admissions may occur at any point during the litigation process. They may arise during discovery, pleadings, opening statements, direct and cross-examination, as well as closing arguments. Lowe v. Kang (Ill.App.Ct. 1988), 167 Ill.App.3d 772, 118 Ill.Dec. 552, 555, 521 N.E.2d 1245, 1248. The district court must focus upon the statement itself, rather than on a certain stage of the litigation proceeding. Plaintiff’s counsel, at the time of hearing on his motion for a new trial, asked the court to rule that the admission in the final argument by defense counsel was a judicial admission of negligence. We note that a preferable procedure would have been for *113 plaintiffs counsel to call that admission to the attention of the court and request the court to give modified instructions to the jury to reflect the admission of negligence.
To determine whether a statement is a judicial admission depends upon the circumstances of each case. Lowe, 118 Ill.Dec. at 555, 521 N.E. 2d at 1248. For a judicial admission to be binding, it must be an unequivocal statement of fact. Childs v. Franco (E.D.Penn. 1983), 563 F.Supp. 290, 292. The District Court should not consider statements of counsel’s conception of the legal theories of the case to be binding. Childs, 563 F.Supp. at 292.
Defense counsel contends he was only arguing an alternative legal theory and merely suggesting that the defendant was negligent. Defense counsel’s unequivocal statements, taken in full context with the rest of his closing argument, constituted judicial admissions on the issue of negligence binding his client. It is obvious from the record that defense counsel changed tactics in order to win a favorable comparative negligence verdict. He amended his counterclaim to establish negligence and comparative negligence theories. Defense counsel’s admissions reflect this change in legal position.
“It’s our position that your decision on Roy Yost’s negligence depends upon whether you find that Roy Yost was more negligent on the 17th of June than John Kohne.”
(Transcript, p. 473.)
“I submit to you that both of them are negligent. You are not going to have a lot of trouble with that very first question of negligence, because, you bet, playing the game in and of itself they were negligent
(Transcript, pp. 478-479, emphasis added.)
“And so when the game starts, he’s more at fault, he’s not equally at fault, he’s more. He’s 55, 60, 75 percent at fault for this game because when the game started and when the game continued, John Kohne continued it.”
(Transcript, p. 492, emphasis added.)
“He was at fault because he played the game too, but he’s the 13-year-old boy and this man that started it all, he was more at fault.” (Transcript, p. 497, emphasis added.)
Other than at the beginning of his closing argument, defense counsel failed to preface these admissions to the jury that the statements were only suggestions. Moreover, several times throughout the closing argument, defense counsel argues his client is negligent at least to some degree. Other uncontroverted evidence fails to support *114 the jury’s verdict. Yost pointed the gun at Kohne. Yost admitted that he thought that the safety was on. Yost had considerable training in the safe use of guns by his father and a hunter safety program, and he admitted he did not follow that training when accidentally shooting Kohne.
We remand for a new trial.
CHIEF JUSTICE TURNAGE and JUSTICES HARRISON, TRIEWEILER, GRAY and McDONOUGH concur.