WORLD MART, INC., a Missouri Corporation, d/b/a American Handicapped Workers of Colorado; and Disadvantaged Workers of America, Inc., a Tennessee Corporation, successor in interest to World Mart, Inc., a Missouri Corporation, Petitioner (Respondent),

v.

James A. DITSCH, Respondent (Complainant).

No. 92–52.

Supreme Court of Wyoming.

June 21, 1993.

Jane A. Villemez, Graves, Santini & Ville-mez, P.C., Cheyenne, for petitioner.

Daniel E. White, Gusea & White, P.C., Cheyenne, and Philip White Jr., Laramie, for respondent.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The essential issue presented by this Petition for Judicial Review of the Findings of Facts, Conclusions of Law and Order by the Wyoming Fair Employment Commission of the Department of Employment of the State of Wyoming (Commission) is the sufficiency of the evidence and other matters of record to justify the relief ordered in favor of James A. Ditsch (Ditsch), a handicapped worker. The hearing officer for the Commission found Ditsch had been passed over for promotion and, subsequently, demoted because of unlawful handicap discrimination. American Handicapped Workers (AHW), as employer, contends that, because the person selected for the promotion also was handicapped, Ditsch did not sustain his burden of proof, and the employer is entitled to select the person most qualified for a position so long as there was no discrimination against a handicapped person. In addition, collateral issues are presented relating to proof of damages and the propriety of that aspect of the order requiring AHW to implement an affirmative action plan. We are satisfied there is no error in this proceeding that would justify a reversal of the order of the Commission. We affirm the Findings of Facts, Conclusions of Law and Order by the Commission.

The issues assigned by AHW in its brief are:

1. Whether Respondent James A. Ditsch failed to establish a *prima facie* case of handicap discrimination, since Petitioner American Handicapped Workers hired a handicapped person for the disputed position.

2. Whether the Administrative Hearing Officer's personal determination regarding the applicants' qualifications sufficiently supports a conclusion of handicap discrimination.

3. Whether the Administrative Hearing Officer erred in shifting the burden of proof to Petitioner to prove non-discrimination.

4. Whether the Administrative Hearing Officer improperly awarded back pay of $66.81 per day, plus interest, with no basis in the record, no relationship to the findings of fact, and no requirement for mitigation of losses.

5. Whether the Administrative Hearing Office abused his discretion in ordering Petitioner to develop and implement an affirmative action program to eliminate the preferential hiring of handicapped or disabled individuals.

The issue as articulated by Ditsch in his Answer Brief of Appellee is:

A. Whether the Department of Employment's December 2, 1991 Final Order is unsupported by substantial evidence or is arbitrary, capricious, in excess of statutory authority, or otherwise unlawful.

In January of 1988, Ditsch, a quadriplegic confined to a wheelchair, was employed as a telemarketer by AHW in its Cheyenne office. AHW is a private, for-profit, telemarketing company that hires only handicapped telemarketers to sell light bulbs and other products to the public. Ditsch was paid $3.35 plus a commission as a telemarketer. On August 27, 1988, Ditsch was promoted to supervisor and assigned the functions of collecting delinquent accounts, verifying orders, returning packages, and training other telemarketers. As a supervisor, Ditsch was given a pay raise from $4.50 to $5.00 an hour. He was the recipient of a performance award by his supervisor, the branch manager.

In January of 1989, the branch manager decided to relocate, and Ditsch applied for the vacant position. Ditsch was one of three finalists selected for consideration for branch manager. Neither of the other two finalists, one male and the other a female, had a visible, physical handicap, but both had a history of alcohol abuse. The history of the female finalist included a sentence of sixteen months in the Iowa Women's Prison for driving under the influence of alcohol. She was the only one of the three finalists who was formally interviewed for the position of branch manager and, subsequently, she was hired as a manager trainee. Two weeks later, she was promoted to the position of branch manager. On February 6, 1989, the new branch manager removed Ditsch from his supervisor's position. Ditsch declined a reassignment to his previous position of telemarketer, and the new branch manager, on behalf of AHW, then terminated Ditsch's employment.

The following month, Ditsch filed a complaint against AHW alleging he was passed over for promotion to the position of branch manager and then discharged because of his handicap, in violation of Wyo. Stat. §§ 27-9-101 to -108 (1991 & Supp. 1992), the Wyoming Fair Employment Practices Act of 1965 (WFEPA). Ditsch alleged he was not promoted because of his handicap, quadriplegia, and the decision to hire the new branch manager was based on a discriminatory consideration of the effects of his handicap. Ditsch asserted that the nine objective factors AHW claimed to have used to support its decision to hire the new branch manager were not really applied. Ditsch claimed, instead, AHW impermissibly relied upon subjective personality traits to determine that the new branch manager had a greater ability to motivate telemarketers which made her the best choice for the position. AHW contended, before the Commission, that it hires and promotes individuals with disabilities pursuant to an affirmative action program, and the new branch manager who was considered and selected for that position was disabled because she was a recovered alcoholic. AHW asserted that motivation of the telemarketers is the most important aspect of the branch manager's position, and the new branch manager was hired on the basis of her superior qualifications.

After investigating Ditsch's complaint, the Commission held a fact-finding conference on August 24, 1989. At that time, AHW offered to reinstate Ditsch as a manager trainee if he would withdraw his claim for unpaid overtime wages and his claim of discrimination. Ditsch declined this offer of settlement and, on October 12, 1990, the Commission sent a letter to counsel for both sides in which it found reasonable cause to believe Ditsch's allegations of discrimination. The Commission proposed a conciliation agreement that was rejected by both parties, and Ditsch then requested that a contested case hearing be scheduled. A two-day hearing was held on June 7 and 8 of 1991.

The administrative hearing officer found the new branch manager was not a recovered alcoholic, and Ditsch was more qualified for the position by virtue of the policies of AHW. As a conclusion of law, the hearing officer ruled AHW had not established by a preponderance of the evidence that Ditsch was denied the position of branch manager or terminated for legitimate, non-discriminatory reasons. The hearing officer also ruled Ditsch was not promoted and then was terminated because of his handicap.

The order for relief issued by the hearing officer directed AHW to reinstate Ditsch in the position of Cheyenne Branch Manager Trainee; awarded back pay and interest to Ditsch of $57,267.12, based on $66.81 per day from February 6, 1989 to December 2, 1991; ordered AHW to cease and desist its discriminatory employment practices; and ordered AHW to implement an affirmative action program within twelve months which would offer equal employment opportunities to all persons regardless of handicap or disability. AHW sought judicial review of this order, and the case then was certified to this court pursuant to Wyo.R.App.P. 12.09.[1]

 We have a settled standard with respect to review of the sufficiency of the evidence to support the decision of an administrative agency. Wyo.Stat. § 16–3–114(c) (1990). If we can identify substantial evidence in the record to support the findings of the agency, in this instance the Commission, we do not substitute our judgment for that of the agency. Rather, we affirm the administrative agency's findings. Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support the findings of the agency. *Sinclair Trucking v. Bailey,* 848 P.2d 1349 (Wyo.1993); *Devous v. Wyoming State Bd. of Medical Examiners,* 845 P.2d 408 (Wyo.1993); *Aanenson v. State ex rel. Wyoming Worker's Compensation Div.,* 842 P.2d 1077 (Wyo.1992); *Mekss v. Wyoming Girls' Sch.,* 813 P.2d

185 (Wyo.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992).

 Our review of agency orders focuses on the sufficiency of the evidence and also considers the reasonableness of the judgment of the hearing officer. We examine the entire record to determine whether substantial evidence supports these findings of fact. *Casper Iron & Metal, Inc. v. Unemployment Ins. Comm'n of the Dep't of Employment of the State of Wyoming,* 845 P.2d 387 (Wyo. 1993); *Amax Coal Co. v. Wyoming State Bd. of Equalization,* 819 P.2d 825 (Wyo. 1991). The burden of establishing the lack of substantial evidence is assigned to the petitioner or the appellant. *Union Tel. Co., Inc. v. Wyoming Pub. Serv. Comm'n,* 821 P.2d 550 (Wyo.1991). We rely upon, and give deference to, the agency's expertise in weighing the evidence, and agency decisions are left undisturbed unless they are "clearly contrary to the overwhelming weight of the evidence on record." *Casper Iron & Metal, Inc.,* 845 P.2d at 392; *Mekss,* 813 P.2d at 201 (quoting *State ex rel. Wyoming Worker's Compensation Div. v. Brown,* 805 P.2d 830, 833 (Wyo.1991)).

 In addition, we must determine whether any errors of law were committed or any constitutional rights were violated. In our review of the conclusions of law by an agency, we determine whether they are in accord with existing law, and we reverse only for errors in applying the law. *Amax Coal; Union Telephone.* If the agency misapplies the correct rule of law to its findings of fact, or if the agency applies the wrong rule of law, we cannot defer to those findings. *Casper Iron & Metal, Inc.; Wyoming Dep't of Employment, Div. of Unemployment Ins. v. Secrest,* 811 P.2d 733 (Wyo.1991). The issues raised by AHW in this case address both the sufficiency of the evidence and the application of the law.

AHW's initial assignment of error is that Ditsch failed to establish a prima facie case of handicap discrimination because the new

---

**1.** Authority for certification now is encompassed by Wyo.R.App.P. 12.09(b) (effective November 1, 1992).

branch manager also was handicapped as a recovered alcoholic. In submitting this argument, AHW relies on federal cases requiring the complainant to prove that a person who was not in the protected class was hired instead of the complainant. *See McDonnell Douglas Corp. v. Greene,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *on remand,* 390 F.Supp. 501 (E.D.Mo.1975), *aff'd,* 528 F.2d 1102 (8th Cir.1976); *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544 (10th Cir.1988). AHW contends that, since alcoholics are a protected class under state and federal law, Ditsch could not establish a prima facie case of discrimination because a member of a protected class, rather than someone outside the protected class, was hired. In making this argument, AHW relies on the State of Wyoming Substance Abuse Policy and Guidelines for its contention that the new branch manager was handicapped and a member of the protected class. The guidelines provide in pertinent part:

> Drug addiction and alcoholism are "physical or mental impairments" within the meaning of state and federal laws and therefore employees addicted to drugs and/or alcohol are handicapped if their impairment substantially limits one of their major life activities and have a record of such impairment or are regarded as having such an impairment.

State of Wyoming Substance Abuse Policy Guidelines at 2, Executive Order 1990–2 (March 8, 1990).

Conversely, Ditsch relies on the federal rule of law that a complainant establishes a prima facie case of discrimination by proving, by a preponderance of the evidence, that the complainant was qualified for a position, but was rejected under circumstances giving rise to an inference of unlawful discrimination. *See Pushkin v. Regents of Univ. of Colorado,* 658 F.2d 1372 (10th Cir.1981). Ditsch also submits AHW failed to establish the new branch manager was a handicapped person under the definitions contained in the administrative regulations adopted by the Commission, which provides, in pertinent part:

> (a) "Handicapped person" means any person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such an impairment.
>
> (b) "Physical or mental impairment" means any * * * mental retardation, organic brain syndrome, emotional or mental illness, or specific learning disabilities.

Rules of Practice and Procedure Before the Wyoming Fair Employment Commission Concerning Handicap Discrimination Complaints Filed Pursuant to the Fair Employment Practices Act of 1965 as Amended, Ch. X, § 3 (Jan. 14, 1986).

The hearing officer found the new branch manager was a practicing alcoholic, rather than a recovered one, and AHW's claim that she was handicapped within the definitional section of the regulations was rejected. Whether or not the new branch manager was "handicapped" either as a recovering or practicing alcoholic, or because she had a criminal record based on alcohol abuse, is not controlling. We hold, in either event, substantial evidence is present in the record to justify a prima facie finding that Ditsch was not promoted to branch manager and was terminated from his supervisor's position was attributable to handicap discrimination.

■ AHW relies on evidence the new branch manager had the ability to motivate a room full of telemarketers, and its perceived lack of this ability in Ditsch, as the main reason the new branch manager was chosen over Ditsch for the position. There was testimony, however, from four other telemarketers that they could be motivated by Ditsch. AHW's vice president and management sales director, who made the final decision to hire the new branch manager, described her as a "very vivacious, outgoing, excitable, enthusiastic person." The district manager for AHW testified the new manager would fulfill the management position more like her predecessor, who had been "charming, up on top of the tables, keeping the room charged all of the time." Ditsch, on the other hand, was described by AHW as "low key," "rigid," and

as having a "slowness with his personality." The outgoing branch manager testified she believed Ditsch was too slow "because he had to write with both hands," instead of having an ability to write with one hand, as she did. Another witness testified Ditsch's handicap made him slow, and he also had a slow personality. That witness went on to describe Ditsch in this way:

> I don't think he is a motivating person that way. He is a very knowledgeable person. Especially, about the products and the company. But, as far as being fast and quick to do certain things, no, I don't think he is fast that way.

From the testimony that Ditsch had to write with both hands and was unable to be as fast or quick as others in doing certain things, the hearing officer reasonably could conclude Ditsch was passed over for the vacancy of branch manager based on the "slowness" engendered by his physical handicap, rather than any "slowness" with his personality, which ostensibly would prevent Ditsch from being able to motivate others. The hearing officer indeed had substantial evidence to find Ditsch was denied the position as branch manager because of handicap discrimination.

■ A similar rationale can be applied to Ditsch's removal from his supervisor's position some two weeks after the new branch manager was appointed. AHW contends it wanted to reassign Ditsch because, based on the observations of the new branch manager, Ditsch simply lacked the ability to motivate the office and he failed to encourage new people or generate enthusiasm. There was contrary testimony by four telemarketers who testified at the hearing that Ditsch was able to motivate them. We also note Ditsch not only had received a raise in pay, but he had received a performance reward as a supervisor prior to his removal and reassignment from that position. AHW also contends the reassignment was necessary because Ditsch's collections were down, and the new branch manager was carrying much of his work load. The record demonstrates, however, that the collection information on

Ditsch was not available at the time he was terminated. Furthermore, there is no dispute that, even if the collection information indirectly reflected on Ditsch's performance as a supervisor, no one at AHW attempted to determine whether Ditsch's handicap may have contributed to a lower collection percentage and, if so, whether a reasonable accommodation could have been made to improve Ditsch's collections.

At the hearing, the vice president and management sales director stated that a supervisor has to be dialing while he is writing and the phone is ringing. When asked whether Ditsch's handicap would impact his ability to hold the phone, dial quickly, or write with a pen, the witness stated:

> Not from what I have heard. I mean he is able to do all of the things that, they mentioned he was able to dial a phone, write up the order. I really, I wouldn't say the handicap was a problem. I never, from what I understood, he was just slow.

Since Ditsch had to use both hands to write, it would be physically impossible for him to meet the job description articulated by the vice president and management sales director for AHW, which included the ability to write and dial the phone at the same time. Obviously, Ditsch would not be able to get "on top of the tables" to motivate others. From these statements and other evidence, the hearing officer reasonably could conclude that Ditsch's lower collection rate and the criticism by the vice president and management sales director that Ditsch "was just slow" were functions of his physical handicap, rather than a "slow personality." It follows that the hearing officer had before him substantial evidence to find the reasons given by the vice president and management sales director for terminating Ditsch were unlawful because they were based on impermissible handicap discrimination.

■ In arguing its second issue, AHW contends the hearing officer made a personal determination that Ditsch was the better qualified of the applicants and then concluded AHW must have discriminated

against Ditsch when it picked the new branch manager for the position of manager trainee to be followed by the promotion to branch manager. In support of its proposition that the Commission is not empowered to exercise an independent judgment as to the merits of qualifications of the applicants, AHW cites *Shenefield v. Sheridan County Sch. Dist. No. 1*, 544 P.2d 870 (Wyo.1976). We do not agree that the record or the finding of the hearing examiner supports the claim that the hearing officer made an independent judgment in this regard. The last sentence in Finding of Fact Number 7 states:

> The evidence of record indicates that Complainant was more qualified than [the new branch manager] by virtue of Respondent's policies * * *.

Some of the testimony taken at the hearing concerned certain letters and documents which identified nine factors that AHW, at various times, claimed supported the decision to hire the new branch manager instead of Ditsch. These factors included the following: (1) Wonderlic test; (2) past telemarketing experience; (3) past telemarketing management experience; (4) ability to train, motivate, supervise, and discipline telemarketers; (5) performance record; (6) stability in private life; (7) ability to maintain accurate records; (8) ability to maintain good customer relations; and (9) ability to act as liaison between AHW and the community in which the branch office is located. AHW admitted Ditsch and the new branch manager were equally qualified as to the last three factors. Because the other six were at issue before the hearing officer, it was necessary that he weigh the evidence presented for each of the factors in order to determine the relative qualifications of the new branch manager and Ditsch and whether the new branch manager actually was more qualified than Ditsch. Since AHW advanced these criteria for comparison of the qualifications of the new branch manager and Ditsch for that position, AHW cannot now complain simply because the hearing officer took the evidence based on its criteria and then found the evidence indicated Ditsch was better qualified for the position

of branch manager. In addition, Finding of Fact Number 7 must be read in conjunction with the third Conclusion of Law of the hearing officer:

> Discrimination on the basis of handicap is prohibited by the WFEPA, and the weight of evidence supports Complainant's allegation that he was not promoted and terminated because of his handicap.

When these statements are taken together and in context, the conclusion is that the evidence demonstrated AHW hired the new branch manager in contravention of its own policies (the six objective factors AHW relied upon) and, thus, violated the WFEPA, which prohibits discrimination on the basis of handicap. There was no personal determination by the hearing officer that Ditsch was more qualified for the position of branch manager. The ruling demonstrates only that the hearing officer found the evidence indicates Ditsch was more qualified, and the weight of the evidence supports handicap discrimination against him.

■ AHW next argues error occurred because the hearing officer shifted to it the burden of proof to demonstrate non-discrimination against Ditsch. This assertion is premised on the final Conclusion of Law by the administrative hearing officer, which states:

> [AHW] has not established by a preponderance of evidence that Complainant was denied the position of Branch Manager or terminated for a legitimate non-discriminatory reason.

The Wyoming Rules of Practice Governing Hearings on Discrimination Complaints before the Commission assigned the burden of establishing a prima facie case of discriminatory or unfair employment practice to the complainant, in this case, Ditsch. Once such a prima facie showing is made, it then is appropriate to shift to the employer the burden of establishing any affirmative defense. The employer, AHW, must rebut the prima facie case of a discriminatory or unfair employment practice. We stated above our conclusion that the hearing officer had substantial evidence to de-

termine Ditsch had established a prima facie case of handicap discrimination without regard to whether the alcoholism of the new branch manager was to be considered as a handicap. Under the Commission's rules, the hearing officer did not err in requiring that AHW rebut Ditsch's prima facie case by demonstrating the new branch manager was more qualified because of her personality, which provided a superior ability to motivate telemarketers.

■ Even if AHW need only demonstrate a legitimate, non-discriminatory reason for hiring the new branch manager, under a burden of going forward with the evidence, Ditsch ultimately established that AHW's explanations of why the new branch manager was more qualified were simply a pretext for handicap discrimination. *Cooper,* 836 F.2d 1544; *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537 (10th Cir.1987), *reh'g denied,* 842 F.2d 253 (10th Cir.1988); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The first six factors out of the identified nine AHW originally invoked, in support of its decision to hire the new branch manager over Ditsch, eventually were discarded by AHW because they failed to prove the new branch manager was more qualified than Ditsch for that position. Once the six-factor analysis was abandoned, AHW formulated still another justification for hiring the new branch manager. It asserted Ditsch's "slow personality" and inability to motivate telemarketers made the other person the better qualified for the branch manager's position. The record, however, demonstrates the alleged "slow personality" and inability to motivate others simply was a pretext for not hiring Ditsch based on his physical "slowness" engendered by his handicap. This pretext also was invoked to reassign Ditsch from a supervisor to a telemarketer. However the burden of proof might be allocated, we hold that the administrative hearing officer made no error in his findings.

The fourth claim of error presented by AHW relates to the award by the hearing officer of back pay to Ditsch of $66.81 per day plus interest. AHW urges that this was erroneous in the following respects:

1. The hearing officer abused his discretion and acted arbitrarily and capriciously as the back pay award is not supported by substantial evidence in the record;

2. The award does not take into consideration Ditsch's duty to mitigate losses and does not deduct Ditsch's unemployment benefits or any actual earnings received; and

3. An award of prejudgment interest cannot be recovered on an unliquidated claim.

AHW argues two reasons why the back pay award is not supported by substantial evidence: (1) the $66.81 was gleaned by Ditsch's counsel from AHW's pre-hearing trial brief, which is not sworn testimony and certainly was not admitted in evidence to support the determination of the hearing officer; and (2) the award was determined based on comment made in written closing argument by Ditsch's counsel that AHW branch managers earn $66.81 per day. It appears the hearing officer believed the evidence was sufficient to establish back pay because the hearing officer denied Ditsch's request to reopen the hearing to present additional proof of damages.

■ We set forth a definition of "substantial evidence" in *Mekss,* 813 P.2d at 200 (citations omitted):

"Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, [the reviewing court] can discern a rational premise for the findings.

There is a rational premise for the finding of the hearing officer with respect to the back pay award. We hold the hearing officer could rely on AHW's trial brief and on Ditsch's written closing statement for this purpose. Both AHW's brief and Ditsch's closing argument agree that $14,765.58 is the amount the new branch manager and her predecessor earned over a period of 221 days as branch managers, which can be computed at the average daily rate of

$66.81. After he had itemized the compensation of the new branch manager during this period at $8,719.96 and her predecessor's at $6,045.62, the trial brief of AHW states:

> Thus, those persons who actually managed Respondent's Cheyenne Branch Office from February 4, 1989, through September 15, 1989, earned a total of $14,765.58.

This language in Ditsch's closing argument demonstrates that he accepted, concurred with, and relied upon, AHW's calculations:

> Mr. Ditsch agrees that [the new branch manager] and [the old branch manager] earned $14,765.58 in the period of time from February 6, 1989 through September 15, 1989. * * * Mr. Ditsch's actual pay as manager might have either exceeded or been less than the pay earned by [the old and new branch managers]. * * * Under these circumstances, it might be more appropriate to figure back pay in accordance with the figures submitted by AHW * * * which reflect the average pay of all managers during this period of time.

■ Courts have held that statements by an attorney concerning the scope of his employment may be admissible against that attorney's client. For example, an attorney's opening statement and an administrative claim filed by an attorney have been identified as admissions of the clients. *United States v. Margiotta*, 662 F.2d 131 (2d Cir.1981) *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984); *United States v. Flores*, 628 F.2d 521 (9th Cir.1980). In *Nichols v. Nichols*, 98 N.M. 322, 648 P.2d 780 (1982), the court ruled admissions in briefs can substitute for facts in the record. It is clear that counsel for both AHW and Ditsch were authorized to act for, and speak on, behalf of their clients. As admissions by a party, the statements of counsel in the trial brief and in closing argument can be considered under the Wyoming Rules of Evidence. We hold a hearing officer or a trial judge acts within the ambit of discretion in relying upon the evidentiary value of such admissions.

■ We need not decide, however, whether the agreements of counsel to the $14,765.58 figure are binding as admissions of their clients or whether the hearing officer might have taken them as such. In administrative agency hearings, hearsay evidence is admissible, and neither party took any opportunity to refute this critical evidence by presenting the sworn testimony of witnesses who might be able to do so. This is not a case in which the hearing officer impermissibly relied on written hearsay evidence to refute conflicting testimony from reliable witnesses on both sides of the controversy. *See Jadallah v. Dist. of Columbia Dep't of Employment Serv.*, 476 A.2d 671 (D.C.Ct.App.1984). Instead, the hearing officer reasonably could conclude, because there was no evidence at odds with the $14,765.58 figure presented by either side at the administrative hearing, that the parties justifiably relied upon, and stipulated to, the accuracy of the back pay figure. There is no difficulty then in discerning a rational premise for the award of back pay by the hearing officer in the amount of $66.81 per day.

■ The hearing officer could accurately and readily compute Ditsch's back pay award based upon the parties' written evidence submitted at the hearing. It follows that there was no error in the grant by the hearing officer of prejudgment interest on the liquidated sum of $66.81 per day. *Holst v. Guynn*, 696 P.2d 632 (Wyo.1985); *Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25 (Wyo.1977).

■ We also hold the ancillary contention by AHW, that the back pay award was not appropriately reduced by an amount equal to Ditsch's failure to mitigate his losses or that the award should be reduced by his unemployment benefits or other earnings received, is without merit. We agree with the Supreme Court of the United States in its assessment of the controlling law in such an instance. Only AHW's unconditional offer of reinstatement would have tolled AHW's liability for back pay as of September 15, 1989, and

AHW's offer was clearly contingent on Ditsch's withdrawal of his handicap discrimination claims. *Ford Motor Co. v. Equal Employment Opportunity Comm'n*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), *on remand*, 688 F.2d 951 (4th Cir.1982). We also conclude the refusal of the hearing officer to deduct Ditsch's unemployment benefits from the back pay award was based on the majority rule and did not result in making Ditsch "more whole" than he would have been if he had not been the victim of a handicap discrimination. *Nat'l Labor Relations Bd. v. Gullett Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). The hearing officer's refusal to require these deductions from the back pay award was lawful and was not otherwise arbitrary or capricious.

■ AHW's final claim of error is that there was an abuse of discretion by the hearing officer when he ordered AHW to develop and implement an affirmative action program to eliminate the preferential hiring of handicapped individuals. AHW relies on the general powers and duties of the Department of Employment as delineated in Wyo.Stat. § 27–9–104(a) (1991) found in WFEPA. Specifically, AHW relies on subsection (iii), which provides that the Commission shall have the power and duty "to receive, investigate, and pass upon complaints alleging discrimination in employment * * * by a person, an employer * * * or the employees or members thereof." The operative portion of the statute, however, is Wyo.Stat. § 27–9–106(g) (1991), which provides (emphasis added):

> *Order of commission.*—If upon all the evidence at a hearing, the commission may find that a respondent has engaged in or is engaging in any discriminatory or unfair employment practice as defined in this chapter, the commission shall * * * issue * * * an order requiring the respondent to cease and desist * * * and to take affirmative action, including hiring, reinstatement or upgrading of employees, with or without back pay * * * as in the judgment of the commission will effectuate the purposes of this chapter.

It is uncontroverted on the record that AHW hired only handicapped individuals for telemarketer positions. In response to this "reverse discrimination," the hearing officer ordered AHW to implement an affirmative action program not based on quotas, but upon good faith efforts to achieve equal employment opportunities for all persons. The language of Wyo.Stat. § 27–9–106(g) quoted above, is sufficiently broad to justify this aspect of the administrative hearing officer's order, and there was no abuse of his discretion.

We hold the Commission's final order of December 2, 1991 is supported by substantial evidence and is not arbitrary, capricious, in excess of statutory authority, or otherwise unlawful. The hearing officer correctly applied the law to the facts which appropriately were found.

The Findings of Facts, Conclusions of Law and Order by the Wyoming Fair Employment Commission of the Department of Employment of the State of Wyoming are affirmed.