William E. FRANCIS, Appellant (Plaintiff),

v.

John A. POUNTNEY, Sr., Appellee (Defendant).

No. 98–76.

Supreme Court of Wyoming.

Feb. 4, 1999.

Eric M. Alden, Wheatland, Wyoming, Representing the Appellant.

Julie Nye Tiedeken, Cheyenne, Wyoming, Representing the Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN & TAYLOR,* JJ.

MACY, Justice.

Appellant William Francis appeals from the judgment which was entered on his negligence claim against Appellee John Pountney, Sr. and from the order denying his motion for a new trial.

We affirm.

## ISSUES

Francis presents the following issues for our review:

1. Was the verdict on comparative negligence contrary to the great weight of the

* Retired November 2, 1998.

evidence and was it error to instruct on comparative negligence?

2. Was the verdict on damages contrary to the Defendant's admissions and the weight of the evidence?

3. Was it error for the Court to instruct on allocation of damages between the accident trauma and a pre-existing condition and to refuse to instruct on the burden of proof for establishing that allocation?

## FACTS

This case involves an automobile accident which occurred on July 28, 1996. Pountney, who was accompanied by his wife and children, was driving a van south on U.S. Highway 85 between Lusk and Torrington. He and his wife saw two vehicles parked on the side of the road. Concerned that someone in the two vehicles might need assistance, Pountney turned around, drove back to the two cars, and stopped in front of them. The Pountneys soon determined that their assistance was not necessary and decided to resume their trip southward. Francis, who was traveling north in his pickup, came upon the scene at that moment. Pountney attempted to make a U-turn directly in front of Francis, and their vehicles collided.

Francis filed a complaint against Pountney, claiming that Pountney's negligence caused the accident. He asserted that he suffered injuries to his neck and his right knee as a result of the collision. Pountney answered, maintaining that Francis was comparatively negligent. The case was tried to a jury in January 1998. The jury found that Francis and Pountney were each fifty percent at fault for the accident. The jury also determined that Francis had not sustained damages. The trial court entered a judgment consistent with the jury's verdict, and Francis filed a motion for a new trial. The trial court denied Francis' motion, and Francis perfected his appeal to this Court.

## DISCUSSION

### A. Comparative Negligence

Francis asserts that there was not sufficient evidence to support the jury's determination that he was comparatively negligent. Pountney argues that the jury's verdict that Francis was fifty percent at fault in the accident was supported by sufficient evidence. We agree with Pountney.

In determining this issue, we apply our standard for reviewing the sufficiency of the evidence to support a jury's conclusions.

On review, this court assumes that the evidence in favor of the successful party is true. We leave out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party, and we afford to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it.

*Kadrmas v. Valley West Homeowner's Association*, 848 P.2d 826, 828 (Wyo.1993) (citation omitted). *See also Cundy Asphalt Paving Construction, Inc. v. Angelo Materials Company*, 915 P.2d 1181, 1183 (Wyo.1996). The elements of a negligence claim are: (1) a duty; (2) a violation of that duty; (3) which violation is a proximate cause of; (4) injury to the claimant. *John Q. Hammons Inc. v. Poletis*, 954 P.2d 1353, 1356 (Wyo.1998). Francis maintains that there was not sufficient evidence to establish the violation-of-duty and proximate-cause elements of Pountney's comparative negligence claim against him.

The trial court instructed the jury that "[a] driver has a duty to keep a proper lookout for others using the highway." The trial judge also told the jury that a driver must have his vehicle under reasonable control "by observing other use of the highway and being able to guide and direct his vehicle, to fix its speed and bring it to a stop in a reasonable distance. Failure to have such control is evidence of negligence."

The trial evidence, when considered in favor of Pountney, supports the jury's determination that Francis was fifty percent at fault in the accident. Robert Hill was an eyewitness to the accident and testified at the trial. Like Francis, Hill was traveling northbound on U.S. Highway 85 on the day of the accident. Hill testified that, as he neared the place where the vehicles were stopped on the

side of the road, Francis passed him. Just when Francis moved back into the northbound lane of traffic after passing Hill, Pountney started to make his U-turn, and the parties collided. The accident occurred at the crest of a long hill, and the highway was marked with a double yellow line which prohibited passing. Francis acknowledged that the double yellow line continued down the hill for "a ways." The jury could have reasonably inferred from this testimony that Francis passed Hill in a no-passing zone and that his action constituted evidence of negligence.

The jury also could have determined that Francis' speed was a factor in the accident. The posted speed limit was sixty-five miles per hour. Hill testified that he was driving between fifty and fifty-five miles per hour. He estimated that Francis was traveling sixty to sixty-five miles per hour when he passed him. Francis acknowledged that he had been driving sixty-five miles per hour prior to the accident, and he conceded that he slowed down only slightly when he noticed the vehicles parked by the side of the road. The highway patrolman who investigated the accident testified that Francis would have had a much better chance of avoiding the accident if he had slowed down significantly. Hill, who was traveling slower, did successfully avoid the accident. The jury could have determined from this evidence that Francis failed to keep his vehicle under control when he did not further reduce his speed as he approached the three vehicles.

In accordance with the trial court's instructions, Francis' failure to keep his vehicle under control was evidence of negligence. The jury also could have reasonably concluded that Francis' negligence, which included passing in a no-passing zone and failing to significantly reduce his speed, was a proximate cause of the accident. The verdict allocating fifty percent of the fault to Francis was, therefore, supported by sufficient evidence.

 Francis claims that the trial court erred by instructing the jury on comparative negligence because no evidence was presented at the trial to establish that he was negligent. Because we have determined that

sufficient evidence supported the jury's determination that Francis was at fault in the accident, there was, obviously, evidence to support a jury instruction on that issue. *See Natural Gas Processing Co. v. Hull*, 886 P.2d 1181, 1187 (Wyo.1994). The trial court did not err by giving the comparative fault instruction.

## B. Damages

 The jury determined that Francis had not suffered damages as a result of the accident. Francis claims that the jury's zero-damages verdict was contrary to the weight of the evidence. As with the previous issue, we apply our well established standard for weighing the sufficiency of the evidence. Juries generally have great discretion in determining the amount of damages to be awarded. *John Q. Hammons Inc.*, 954 P.2d at 1358; *see also Union Pacific Railroad Company v. Richards*, 702 P.2d 1272, 1278 (Wyo.1985). We are reluctant to interfere with a jury's verdict on damages "unless the award, by its excessiveness or inadequacy, denotes passion, prejudice, bias or some erroneous basis." *John Q. Hammons Inc.*, 954 P.2d at 1358. *See also Union Pacific Railroad Company*, 702 P.2d at 1278.

Francis claimed that his right knee and his neck were injured in the accident. The parties presented evidence to establish the extent to which Francis' knee and neck problems were a product of the accident and the extent to which they were a result of medical conditions that he suffered from prior to the accident.

 Francis had undergone three surgical procedures on his right knee prior to the accident. The surgeries did not, however, completely resolve Francis' knee problems. The medical testimony confirmed that Francis had arthritis in his knee. His arthritic condition was progressive and would have grown worse regardless of whether or not he injured his knee in the accident.

Pountney presented evidence showing that Francis had been diagnosed with arthritis in his neck as early as 1987. Francis maintained that the arthritis in his neck did not cause him pain prior to the accident but that,

after the accident, he suffered from pain and loss of range of motion in his neck. The medical testimony indicated, however, that a person with an arthritic condition like Francis' condition might experience symptoms which were similar to those symptoms that Francis complained about even without enduring a trauma to the neck. The jury could have reasonably concluded from this evidence that Francis' knee and neck symptoms were not a result of the accident and that he had not, therefore, suffered damages.

The parties also presented conflicting evidence at the trial as to the extent to which Francis' injuries affected his normal activities. Francis owned a ranch and a dirt moving business. He introduced evidence at the trial to show that, after the accident, he was not able to perform many of the ranching and construction activities he had engaged in prior to the accident. In contrast, Pountney offered testimony indicating that Francis continued to partake in those activities. This evidence suggested that Francis might not have been injured in the accident.

The evidence, when viewed in favor of Pountney, was sufficient to support the jury's determination that Francis had not suffered damages as a result of the accident. The verdict was not the result of passion, prejudice, bias, or other improper considerations, and we, therefore, refuse to interfere with it.

During her closing argument, Pountney's attorney made three statements in which she indicated she thought that Francis had some pain after his accident but that his injuries were less extensive than he claimed. Francis maintains that these statements were admissions that he sustained injuries in the accident. He argues, therefore, that Pountney should be bound by his attorney's admissions and that the statements were strong evidence that the zero-damages verdict was erroneous.

■■■ A judicial admission is an express waiver made in court by a party or his attorney conceding the truth of an alleged fact. *Kohne v. Yost,* 250 Mont. 109, 818 P.2d 360, 362 (1991). Under the right circumstances, an admission made by an attorney can be binding upon his client and constitute the basis for a verdict. *Childs v. Franco,* 563

F.Supp. 290, 292 (E.D.Pa.1983); *Larson v. A.T.S.I,* 859 P.2d 273, 275 (Colo.Ct.App.1993); *see also World Mart, Inc. v. Ditsch,* 855 P.2d 1228, 1237 (Wyo.1993). Such an admission can be made in closing argument. *Childs,* 563 F.Supp. at 292; *World Mart, Inc.,* 855 P.2d at 1237; *Kohne,* 818 P.2d at 362.

■■■ In order to be considered an admission, the attorney's statement must be unequivocal. *Childs,* 563 F.Supp. at 292; *Baxter v. Gannaway,* 113 N.M. 45, 822 P.2d 1128, 1133 (Ct.App.), *cert. denied,* 113 N.M. 16, 820 P.2d 1330 (1991). An admission is a declaration relating to factual matters; a statement of personal opinion is not an admission. *Baxter,* 822 P.2d at 1133; *Larson,* 859 P.2d at 276. In determining whether a statement made by counsel is an admission, we must consider the circumstances of the case and the context of the statements. *Baxter,* 822 P.2d at 1133; *Kohne,* 818 P.2d at 362. If ambiguity or doubt exists as to whether or not the attorney's statement was an admission, we presume that the attorney did not intend to make a judicial admission during his argument. *Baxter,* 822 P.2d at 1133.

■■■ With these principles in mind, we conclude that the statements made by Pountney's attorney during her closing argument were not judicial admissions. The attorney was obviously expressing her personal opinion because she qualified each of her statements with the words "I think." Furthermore, when we consider the attorney's statements in the context of her entire closing argument and the circumstances of the case, it is clear that Pountney did not concede that Francis had suffered damages as a result of the accident. The statements made by Pountney's counsel do not undermine our confidence in the jury's determination.

Finally, Francis contends that the trial court erred by instructing the jury on allocating the damages between the accident trauma and Francis' preexisting condition and by refusing to instruct the jury on the burden of proof for establishing the allocation. The jury determined that Francis had

not suffered damages as a result of the accident, and we have concluded that sufficient evidence supported that determination. Accordingly, the basis for allocating Francis' damages between the accident trauma and his preexisting condition is irrelevant. *See Schaub v. Wilson,* 969 P.2d 552, 555–57, 558 (Wyo.1998). We do not, therefore, need to address this issue.

Affirmed.