DAVIS, Justice,
dissenting, with whom BURKE, Chief Justice, joins.
[¶ 42] I must respectfully dissent. The majority finds that the district court abused its discretion in finding that there was a material change of cireumstances. In my opinion, this conclusion is incorrect for two reasons. First, Appellant conceded below that her move to the Denver area did constitute a material change of cireumstances, and she never attempted to withdraw that concession. Second, when the appropriate standard of review is applied, with the required deference to the district court's discretion, the decision should be affirmed in any event.
[¶ 43] In her response to Appellee's motion for a temporary order, Appellant conceded that "Plaintiff [Appellant] would state that moving the minor child is a materiel [sic] change in cireumstances but would affirmatively state that this relocation is in the best interest of the parties' minor child." Counsel for Appellant repeated this concession at the hearing on Appellant's motion for the temporary order, indicating that:
It's kind of an interesting area because I think a material change in cireumstances always occurs when you move. That's always been kind of my take on that. But really what matters is what's in the best interest of the child.
[¶ 44] At the hearing on the merits of the *388 motion for a change of custody, [9] Appellee's counsel twice reminded the court that Appellant had already conceded that there was a material change of cireumstances. Appellant's counsel did mention that Appellee had to prove both a substantial change of cireum-stances and that a change was in GK's best interests. She also distinguished the facts from those in Arnott v. Arnott, 2012 WY 167, 293 P.3d 440 (Wyo.2012), where a parent moved to Virginia. However, she did not ask the court to relieve her client of the earlier admission after Appellee's counsel referred to it, and her argument appears to be directed to GK's best interests, consistent with her client's earlier concession. The guardian ad litem, whose job it was to act in GK's best interest, after investigating the facts of the case and participating in the hearing, stated as follows:
I agree with [Appellee's counsel] that a substantial change [of cireumstances] has occurred in this case. I agree with [Appellant's counsel at the time] that this case is different than the Arnott case. But, nonetheless, we are before the Court where mom has moved to Denver, which would relocate G. to a new school, a new home environment, a new home with Mr. Kato in it, and so I do think there has been a substantial change in circumstances. What is really in the forefront of my mind is what's in G.'s best interest.
[¶ 45] Under the cireumstances, it is hardly surprising that the district judge disposed of the material change of cireum-stances issue with a single sentence, finding that:
The Plaintiff's conviction for larceny, her loss of employment, her relationship with Mr. Milner, her recent marriage and her move to and from and to Denver, add up to a material change in cireumstances.
There was no need for further analysis. Appellant had conceded that the effects of the move to Denver alone were sufficient to confer jurisdiction to consider modification.
[¶ 46] That there was a material change of cireumstances should be considered established by a judicial admission. We have recently discussed the elements of a judicial admission:
A judicial admission is an express waiver made in court by a party or his attorney conceding the truth of an alleged fact. Kohne v. Yost, 250 Mont. 109, 818 P.2d 360, 362 (1991). Under the right cireum-stances, an admission made by an attorney can be binding upon his client and constitute the basis for a verdict. Childs v. Franco, 563 F.Supp. 290, 292 (E.D.Pa.1983); Larson v. A.T.S.I., 859 P.2d 273, 275 (Colo.Ct.App.1993); see also World Mart, Inc. v. Ditsch, 855 P.2d 1228, 1237 (Wyo.1993). Such an admission can be made in closing argument. Childs, 563 F.Supp. at 292; World Mart, Inc., 855 P.2d at 1237, Kohne, 818 P.2d at 362.
In order to be considered an admission, the attorney's statement must be unequivocal. Childs, 563 F.Supp. at 292; Baxter v. Gannaway, 113 N.M. 45, 822 P.2d 1128, 1133 (Ct.App.), cert. denied, 113 N.M. 16, 820 P.2d 1330 (1991). An admission is a declaration relating to factual matters; a statement of personal opinion is not an admission. Baxter, 822 P.2d at 1133; Larson, 859 P.2d at 276. In determining whether a statement made by counsel is an admission, we must consider the cireum-stances of the case and the context of the statements. Baxter, 822 P.2d at 1133; Kohne, 818 P.2d at 362. If ambiguity or doubt exists as to whether or not the attorney's statement was an admission, we presume that the attorney did not intend to make a judicial admission during his argument. Baxter, 822 P.2d at 1133.
Big-D Signature Corp. v. Sterrett Properties, LLC, 2012 WY 138, ¶ 29, 288 P.3d 72, 79-80 (Wyo.2012) (quoting Francis v. Pountney, 972 P.2d 143, 147 (Wyo.1999)).
*389 [$47] The statement in Appellant's response to the motion for a temporary order was unequivocal, and it was reinforced by the statement made in closing argument at the temporary order hearing. No effort was made to withdraw it, and Appellee evidently relied on it in putting on his case. The brevity of the district court's finding on this issue suggests that it relied upon it as well.
[¶48] In addition, if the district court could be said to have erred, that error was invited by Appellant's concession that the move to the Denver area alone was a material change of circumstances. Platt v. Platt, 2011 WY 155, ¶ 21, 264 P.3d 804, 811 (Wyo.2011) (citing TF v. Dep't of Family Servs., 2005 WY 118, ¶ 27, 120 P.3d 992, 1002 (Wyo.2005); Robbins v. Robbins, 2002 WY 80, ¶ 10, 46 P.3d 880, 883 (Wyo.2002)). The district judge spared no effort to address the issues the parties raised; he held appropriate hearings and issued a thorough decision, and would undoubtedly have addressed the material change question in more detail if it had truly been an issue.
[¶ 49] Moreover, when one considers all the evidence in the record, the district judge did not abuse his discretion. I digress briefly to point out that we expect a great deal of district judges in custody cases. In most of these disputes, as in this one, both families are drawn into the fray. In fact, here two of the parties' adult daughters sided with and testified consistently with Appellee, and one sided with and testified consistently with Appellant. This pattern continued with teachers, friends, and Appellant's twin sister. We expect judges to peer into this kind of miasma and determine much more than what the facts are and which of them are important. We also expect them to determine whether a parent will in the future do the things necessary to provide for a child and work with the other parent and extended family so that they can all maintain meaningful relationships. *
[¶ 50] It would be an obtuse party who would come to court and not promise cooperation with the other parent and willingness and ability to do whatever it takes to see that a child is well-cared-for. That is the reality of these situations. Sometimes the only means by which a judge can determine whether a parent is sincere is by weighing past behavior and seeing and hearing the party testify. The majority did not have the benefit of the latter, and instead reweighs the evidence contained in a cold record.
[¶ 51] All agree on the standard of review. We review custody issues, including whether there has been a material change in cireumstances, for an abusé of discretion. Arnott, ¶ 11, 293 P.3d at 444. We view the evidence in the light most favorable to the district court's determination, affording the prevailing party every favorable inference and omitting from our consideration conflicting evidence. Willis v. Davis, 2013 WY 44, ¶ 5, 299 P.3d 88, 91 (Wyo.2013). An abuse of discretion occurs only if the district court could not reasonably conclude as it did, or if there has been a procedural error. In re TLJ, 2006 WY 28, ¶ 6, 129 P.3d 874, 876 (Wyo.2006).
[¶ 52] The district court's decision as to GK's best interests is not challenged by Appellant or evaluated by the majority. If we do not consider a material change of cireum-stances to have been judicially admitted, as I think we should, there was ample evidence to support the decision and under our controlling standard of review the district court did not abuse it discretion.
® Appellant was convicted by a jury of her peers of petty larceny for stealing a cellular phone and consequently lost her job. The question is not whether GK might know or later learn of this-it is whether a parent who steals a phone and loses her job over it is stable enough to care for a young child. This factor alone is probably not sufficient to be a material change of cireumstances, but it is worthy of consideration.
_®@ The parties' decree of divorcee required Appellant to notify Appellee of her planned move to Denver fifteen days before moving. She did not do so. The district court could reasonably have inferred that she did so to present it with a fait accompli, then argue that, as GK had started school, it would be disruptive to return her to Wyoming. This would *390 not bode well for future cooperation with Appellee.
e At one point, Appellant moved back to Lingle on the advice of her first attorney, evidently in an effort to influence the outcome of the custody case, and then abandoned that course of action when she realized "this wasn't our plan."
® We recognized in Arnott that a move may be a substantial change of cireum-stances. 2012 WY 167 at ¶ 40, 298 P.3d at 458. The evidence in this case is certainly in conflict, but viewed in the light most favorable to Appellee as it should be, disregarding the evidence presented by Appellant, it indicates the following:
e GK attends a school with a small class, and her teachers are able to give her the individual attention a child with her impressive intellect needs. It is undisputed that she has excelled in this environment.
e Although GK is a very bright girl who may certainly exeel in an urban school in the Denver area, there was no way for the district judge to test that possibility. On the other hand, the Lingle school system is a proven commodity.
@The child has a circle of friends with whom she enjoys spending time.
e The parents of GK's friends and Appellee help each other by picking children up from school, watching them on occasion, ete. She thus has a good extended support system in Lingle.
e Both parties have relatives in the Lingle and Bayard, Nebraska area. Appellant's sister works at GK's school, where she can keep an eye on her.
® Appellee provides GK with good care, and has been significantly involved with her school.
[¶ 53] A move which requires a child to move to an urban area more than commuting distance from where she has lived, places her in a home with a new surrogate parent (her stepfather), requires her to attend a different school, and removes her from her circle of friends and support network does affect that child. It is a material change of circumstances if the proper standard of review is applied.
[¶ 54] The real question, as both parties and the guardian ad litem recognized until this appeal, was whether it is in GK's best interest to be in the custody of her mother or father, both of whom are good parents. Even though there is a material change of cireumstances, the move might still be in (GK's best interest for the reasons Appellant argued below. Whether it is or is not is a close and difficult question, and judges (perhaps including this one) could reasonably arrive at diametrically opposed conclusions and not abuse their discretion on these facts regardless of which choice was made.
[¶ 55] I do not believe the issue of whether there was a material change of cireum-stances is close, however, and I would conclude that the district court acted well within its discretion in finding as it did when the evidence is viewed in the light most favorable to the Appellee. I would therefore affirm.

. The district judge should be commended for the alacrity with which he addressed a situation that was potentially harmful to GK. He held a hearing on the motion for a temporary order thirteen days after it was filed and ruled from the bench, temporarily changing custody. He held the hearing on the merits less than five months after the original petition for modification was filed, and he issued a thorough decision letter less than a month later, at a time when the child could have transferred to another school if Appellant had prevailed.